# No. 1:15-cv-06569 (KPF)

IN THE

# United States District Court

FOR THE SOUTHERN DISTRICT OF NEW YORK

————— ▶►◀ —————

In re AMPAL-AMERICAN ISRAEL CORPORATION
(Chapter 7 Case No. 12-13689) (SMB) (Bankr. S.D.N.Y.)

————————————

YOSEF A. MAIMAN AND MERHAV (M.N.F.) LIMITED,

*Appellants,*

v.

ALEX SPIZZ,

*Appellee.*

————————————

*On Appeal from the United States Bankruptcy Court
For the Southern District of New York*

## APPELLANTS' APPENDIX
## VOLUME II of VII (Pages APP-126 to APP-180)

David M. Friedman
Daniel A. Fliman
Michele L. Angell
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
DFriedman@kasowitz.com
DFliman@kasowitz.com
MAngell@kasowitz.com

*Attorneys for Appellants
Yosef A. Maiman and Merhav (M.N.F.) Limited*

## TABLE OF CONTENTS

<u>Page</u>

Bankruptcy Court Chapter 7 Docket Entries (Case No. 12-13689) ....................................... APP-1

Bankruptcy Court Adversary Proceeding Docket Entries (Adv. Pro. No. 14-02385) ......... APP-15

Transcript of Hearing Held on July 11, 2013 [Docket No. 318] ........................................... APP-21

Transcript of Hearing Held on November 14, 2013 [Docket No. 374]................................ APP-36

Memorandum Decision Denying Motion for Relief Based on Violation of the
    Automatic Stay [Docket No. 382] ...................................................................................... APP-70

Supplemental Order Concerning Trustee's Access to Debtor's Files, Books and
    Records [Docket No. 532] .................................................................................................. APP-91

Notice of Presentment of Order Authorizing Retention of Tarter Krinsky & Drogin
    LLP in Place of Spizz Cohen & Serchuk, P.C. as Substitute Counsel to the
    Trustee Pursuant to 11 U.S.C. § 327 and Federal Rule of Bankruptcy Procedure
    2014 [Docket No. 573]....................................................................................................... APP-96

Yosef A. Maiman and the Controlling Shareholders' (I) Objection to the Retention
    of Tarter Krinsky & Drogin LLP as Substitute Counsel to the Trustee and (II)
    Motion to Disqualify Alex Spizz as Chapter 7 Trustee [Docket No. 576] .................. APP-115

Joinder of Irit Eluz in Support of Yosef A. Maiman and the Controlling
    Shareholders' (I) Objection to the Retention of Tarter Krinsky & Drogin LLP
    as Substitute Counsel to the Trustee and (II) Motion to Disqualify Alex Spizz
    as Chapter 7 Trustee [Docket No. 577]........................................................................... APP-137

Supplemental Declaration of Arthur Goldstein Pursuant to Bankruptcy Rule 2014
    on Behalf of Tarter Krinsky & Drogin LLP as Proposed Substitute Counsel to
    Trustee and Disclosure Pursuant to Bankruptcy Code Sections 327 and 329 and
    Bankruptcy Rule 2014 [Docket No. 582] ...................................................................... APP-139

Affidavit of Alex Spizz as Trustee in Response to the (1) Objection Filed By
    Yosef A. Maiman and the Controlling Shareholders to the Retention of Tarter
    Krinsky & Drogin LLP in Place of Spizz Cohen & Serchuk, P.C. as Substitute
    Counsel to the Trustee; and (2) Cross-Motion to Disqualify Alex Spizz as
    Chapter 7 Trustee [Docket No. 587] .............................................................................. APP-142

Chapter 7 Trustee's and Tarter Krinsky & Drogin LLP's Memorandum of Law in
    Response to Yosef A. Maiman and the Controlling Shareholders' (I) Objection
    to the Retention of Tarter Krinsky & Drogin LLP as Substitute Counsel to the
    Trustee and (II) Motion to Disqualify Alex Spizz as Chapter 7 Trustee [Docket
    No. 588] ........................................................................................................................... APP-269

Tarter Krinsky & Drogin LLP's Response to:  (1) the Objection of Yosef A.
Maiman and the Controlling Shareholders to the Retention of Tarter Krinsky
& Drogin LLP in Place of Spizz Cohen & Serchuk, P.C. as Substitute Counsel
to the Trustee; and (2) Cross-Motion to Disqualify Alex Spizz as Chapter 7
Trustee [Docket No. 589] .............................................................................. APP-296

Second Supplemental Declaration of Arthur Goldstein Pursuant to Bankruptcy
Rule 2014 on Behalf of Tarter Krinsky & Drogin LLP as Proposed Substitute
Counsel to Trustee and Disclosure Pursuant to Bankruptcy Code Sections 327
and 329 and Bankruptcy Rule 2014 [Docket No. 590]................................... APP-312

Reply in Further Support of Yosef A. Maiman and the Controlling Shareholders'
(I) Objection to the Retention of Tarter Krinsky & Drogin LLP as Substitute
Counsel to the Trustee and (II) Motion to Disqualify Alex Spizz as Chapter 7
Trustee [Docket No. 594] .............................................................................. APP-315

Transcript of Hearing Held on May 21, 2015 [Docket No. 596] ....................... APP-405

Response to the Court's Request for the United States Trustee's Position With
Respect to the Appointment of a Co-Trustee or Estate Representative [Docket
No. 599] ....................................................................................................... APP-435

Transcript of Hearing Held on June 9, 2015 [Docket No. 602]........................... APP-439

Findings of Fact and Conclusions of Law Granting Trustee's Motion to Retain
Tarter Krinsky & Drogin LLP as Counsel and Denying Cross-Motion to
Disqualify the Trustee [Docket No. 611]........................................................ APP-517

Order (I) Authorizing Retention of Tarter Krinsky & Drogin LLP in Place of
Spizz Cohen & Serchuk, P.C. as Substitute Counsel to the Trustee Pursuant
to 11 U.S.C. § 327 and Federal Rule of Bankruptcy Procedure 2014, and
(II) Denying Cross-Motion to Disqualify Trustee [Docket No. 615] ........................ APP-550

Notice of Appeal from Order (I) Authorizing Retention of Tarter Krinsky &
Drogin LLP, and (II) Denying Cross-Motion to Disqualify Trustee [Docket
No. 618] ....................................................................................................... APP-554

**E.** **TKD's Representation of Mishmeret As a Post-Petition Lender to the Estate.**

21. On May 21, 2014, the Trustee filed a motion for authority to enter into a litigation financing agreement with various bondholders and debenture trustees, including Mishmeret [Docket No. 407]. Under the loan (the "**Litigation Financing**"), Mishmeret and other lenders loaned $1.5 million to the Trustee to fund litigation against Mr. Maiman and Merhav. Repayment of the Litigation Financing is secured by liens on proceeds of such litigations.

22. TKD represented Mishmeret in connection with the Litigation Financing. *Indeed, Scott Markowitz, a partner at TDK, signed the Litigation Financing Agreement on behalf of Mishmeret.* (*Id.* at 35.) Notably, this representation is not disclosed or addressed in the Application. Upon information and belief, the Litigation Financing remains outstanding.

**F.** **The Estate Owns Valuable Causes of Action Against Mishmeret and Shapira, Which the Trustee has Declined to Pursue.**

23. On November 24, 2014, Mr. Maiman and Merhav initiated a third party action (the "**Third Party Complaint**") against Hermatic Trust (1975) Ltd., Reznik Paz Nevo R.P.N. Trusts 2007 Ltd., Mishmeret (collectively, the "**Indenture Trustees**"), Psagot Investment House Ltd., Meitav Investment House Ltd., Shapira, and Ofer Shapira (collectively, and with the Indenture Trustees, the "**Third Party Defendants**").[15]

24. In the Third Party Complaint, Mr. Maiman and Merhav allege that the Third Party Defendants orchestrated an elaborate scheme which sabotaged Merhav's development of an ethanol refinery in Colombia (the "**Ethanol Project**"). Specifically, while engaged in prepetition debt restructuring negotiations with the Debtor, the Third Party Defendants published a multitude of defamatory news articles against Mr. Maiman and Merhav to gain leverage at the

---

[15] *See Third-Party Complaint*, Adv. Proc. No. 14-02385 (SMB) [Docket No. 8].

## APP-127

bargaining table.[16]  Not only did this tortious tactic ultimately drive the Debtor into bankruptcy, it had the effect of dissuading the potential equity partners in the Ethanol Project from carrying out their planned investments, preventing the closing of financing that was already negotiated, thereby derailing the project entirely.[17]  Critically, the Debtor also suffered injuries as a result of the Third Party Defendants' conduct, as the Debtor stood to receive a 25% equity interest in the project.[18]  This valuable equity interest was thwarted by the Third Party Defendants' tortious conduct.

25.     As further alleged in the Third Party Complaint, the continued assault in the press against the Debtor, Mr. Maiman and Merhav persisted after the Petition Date, causing severe damage to the Debtor.  Most notably, in late 2013, Ofer Shapira announced to the Israeli press that the bondholders intended to force a sale of Gadot (one of Ampal's portfolio companies). The very next day Israel Discount Bank nominated a receiver for Gadot's shares in an effort to try to recover on financing it had made to acquire such shares.   The appointment of the receiver caused Ampal and its subsidiary to lose tens of millions of dollars in its investment in Gadot.[19]

26.     The estate has valuable causes of action against Mishmeret and Shapira.  By virtue of having represented Mishmeret and Shapira in this case, TKD, and by imputation the Trustee, are irreconcilably conflicted and cannot and should not be charged with prosecuting these important causes of action on behalf of the estate.

## **ARGUMENT**

**A.**     **The Application Should be Denied Under 11 U.S.C. § 327.**

27.     Section 327 of the Bankruptcy Code provides, in relevant part:

---

[16]     *Id.* ¶ 32-33.
[17]     *Id*. ¶ 38.
[18]     *Id.* ¶ 31, 40.
[19]     *Id.* ¶¶ 39-42.

APP-128

> Except as otherwise provided in this section, the trustee, with the
> court's approval, may employ one or more attorneys, accountants,
> appraisers, auctioneers, or other professional persons, *that do not
> hold or represent an interest adverse to the estate,* and that are
> disinterested persons, to represent or assist the trustee in carrying
> out the trustee's duties under this title.

11 U.S.C. § 327(a) (emphasis added). Thus, section 327(a) requires that a trustee seeking to

retain an attorney satisfy a two-prong test: (i) the attorney must not hold or represent an interest

adverse to the bankruptcy estate, *and* (ii) the attorney must be a disinterested person. *In re

Angelika Films 57th, Inc.*, 227 B.R. 29, 37 (Bankr. S.D.N.Y. 1998), *aff'd*, 246 B.R. 176

(S.D.N.Y. 2000) (citing *In re Leslie Fay Cos., Inc.*, 175 B.R. 525, 531 (Bankr. S.D.N.Y. 1994)).

"The structure of the Bankruptcy Code distills these dual requirements into a single test for

analysis of a conflict of interest." *In re JMK Constr. Grp., Ltd.*, 441 B.R. 222, 229 (Bankr.

S.D.N.Y. 2010). Although "[i]n a case under chapter 7 . . . a person is not disqualified for

employment under this section solely because of such person's employment by or representation

of a creditor," if "there is objection by another creditor . . . the court *shall* disapprove such

employment if there is an actual conflict of interest." 11 U.S.C. § 327(c) (emphasis added).[20]

"[A]ctual conflict involves the representation of two presently competing and adverse

interests[.]" *In re Granite Partners, L.P.*, 219 B.R. 22, 33 (Bankr. S.D.N.Y. 1998) (Bernstein,

J.).

    28. "To hold an adverse interest has come to mean either (1) the possession or

assertion of any economic interest that would tend to lessen the value of the bankruptcy estate or

---

[20] "Section 327 of the Code does not permit excusing the limitation of those provisions by waiver or by the
trustee's consent to the representation of dual interests. The attorney must be 'disinterested' and must not 'hold or
represent an interest adverse' to the estate. The explicit limitations contained in the statute reflect Congressional
concerns with what it perceived to have been past abuses. It also recognizes that what may be acceptable in a
commercial setting, where all of the entities are solvent and creditors are being paid, is not acceptable when those
entities are insolvent and there are concerns about intercompany transfers and the preference of one entity and its
creditors at, perhaps, the expense of another." *In re Amdura Corp.*, 121 B.R. 862, 866 (Bankr. D. Colo. 1990)
(citations omitted).

APP-129

[that would] create either an actual *or* potential dispute with the estate as a rival claimant, *or* (2) a predisposition of bias against the estate." *Angelika Films*, 227 B.R. at 38 (emphasis added) (citations and internal quotation marks omitted). Indeed, in *In re Vebeliunas*, then-Chief Judge Brozman disqualified the chapter 7 trustee's counsel when a member of the firm indicated bias by telling the debtor's assistant he did not believe anything the debtor said. 231 B.R. 181, 186 (Bankr. S.D.N.Y. 1999). "More generally, [adverse interest] includes any interest or relationship, however slight, that would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules." *Granite Partners*, 219 B.R. at 33 (citations and internal quotation marks omitted). "In other words, if it is *plausible* that the representation of another interest may cause the debtor's attorneys to act any differently than they would without that other representation, then they have a conflict and an interest adverse to the estate." *Leslie Fay*, 175 B.R. at 533 (emphasis added).

29.     Here, the Application must be denied because Shapira and Mishmeret – TKD's clients *in this case* – have interests adverse to the estate, as evidenced by the Litigation Financing and their history, discussed *supra*, of taking actions to harm the estate. Moreover, the estate owns valuable causes of action against Mishmeret and Shapira, which TKD undoubtedly will decline to pursue against its former clients.

**1.      TKD Represented the Adverse Interests
of Mishmeret and Shapira in this Case.**

30.     TKD seeks to switch sides from creditor to estate fiduciary halfway through the bankruptcy case – which presents an *actual conflict* by placing TKD squarely on the other side of positions and arguments its former clients, Mishmeret and Shapira, have taken and made *in this case. See In re Quality Beverage Co.*, 216 B.R. 592, 595 (Bankr. S.D. Tex. 1995) ("[Accounting firm] has performed services for the Committee, and now seeks to perform services for the

APP-130

Trustee who has potential preference actions against members of the Committee, resulting in a potential dual representation. Where there is a dual representation, an 'actual conflict' exists.") (citation omitted). Moreover, "an attorney's conflicts are ordinarily imputed to his firm based on the presumption that 'associated' attorneys share client confidences. There is a presumption that if one attorney is conflicted, then the entire firm is conflicted." *In re MF Global Inc.*, 464 B.R. 594, 605 n.10 (Bankr. S.D.N.Y. 2011) (internal citations and quotations omitted). "The bottom line concern is that counsel's independent judgment should not be compromised in any way. If the goal is disinterestedness, whether an attorney holds a bias or instead suffers from the likelihood of tainted judgment as a result of a conflict of interest, the wrong is the same, for his or her ability to maintain independence of judgment will be negatively affected." *Vebeliunas*, 231 B.R. at 193. TKD's judgment necessarily will be tainted by its representation of Mishmeret and Shapira in this case.

31. Both Shapira and Mishmeret clearly hold adverse interests to the estate. First, Shapira prepared and transmitted the Shapira Letter, on Mishmeret's behalf, seeking to usurp causes of action that rightfully belonged to the Debtor's estate. The Court held that this was a *prima facie* violation of the automatic stay. In so deciding, the Court acknowledged that Mishmeret and Shapira had adverse interests to the Debtor.[21] Second, Mishmeret is a lender to the Trustee and the estate as a result of the Litigation Financing negotiated and executed by TKD. Third, Shapira inflicted significant *postpetition* harm on the estate when it caused a loss of tens of millions of dollars on the investment in Gadot. Fourth, as set forth at length in the Third Party Complaint, Mishmeret and Shapira engaged in a persistent, prepetition smear campaign against Mr. Maiman and Merhav through defamatory articles and untrue comments. Those misstatements dissuaded the potential equity partners in the Ethanol Project from carrying out

---

[21] *See* Stay Decision at 20-21.

their planned investments, preventing the closing of financing that was already negotiated, thereby derailing the project entirely, of which the Debtor and its estate would have received a 25% ownership interest.

32.     In terms of bias, the attorney's remark in *Vebliunas* pales in comparison to TKD's clients' statements about the Debtor and its equity holder, Mr. Maiman, in this case. Mishmeret embarked upon a well orchestrated and very public smear campaign targeting the Debtor and Mr. Maiman. Indeed, because Mishmeret's (and the other bondholders') personal animosity towards Mr. Maiman is so fervent, they failed to care or consider whether they were acting in a commercially reasonable manner and were amenable even to inflicting harm on the Debtor itself – which they did. To say this indicates "bias" would be an understatement.

33.     In these circumstances, the same law firm that represented Mishmeret and Shapira in this case cannot now represent the chapter 7 Trustee. That TKD allegedly no longer represents Shapira and Mishmeret does not change the result.[22] *See In re Hammer*, Nos. WW–06–1373–MODJ, 04–22244, 2007 WL 7540945, at *11 (B.A.P. 9th Cir. Aug. 17, 2007) ("Even if City was not Law Firm's client at all relevant times, Law Firm has incentives not to jeopardize its valuable relationship with City or expose itself to possible liability by exposing any weakness in City's claim . . . . The bankruptcy court clearly erred in finding that Law Firm had no conflict of interest . . . ."); *In re S. Kitchens, Inc.*, 216 B.R. 819, 829 (Bankr. D. Minn. 1998) ("Because of the possibility that its former client is liable for the damage that it attributes to the Defendants,

---

[22]     TKD will likely cite *Bank Brussels Lambert v. Coan (In re AroChem Corp.)*, 176 F.3d 610 (2d Cir. 1999) for the proposition that section 327(a) only disqualifies professionals based on current representations. However, that case is inapposite, because the law firm in question there was retained as special counsel for an isolated purpose "rather than as general counsel to handle the entire bankruptcy proceeding," and accordingly, the court evaluated the conflict only within the context of that limited proposed representation, with respect to which – in sharp contrast to the case here – the proposed firm's former client and the estate "share[d] an identity of interests." *Id.* at 622, 627-628. Moreover, another key difference is that Mishmeret remains a lender *today* under the Litigation Financing, which TKD negotiated and executed on behalf of Mishmeret. Given this, TKD, and the Trustee as its partner, cannot advocate for the estate in disputes with the lenders under the Litigation Financing, and thus are conflicted.

F&W must be deemed to have represented an interest that is adverse to the estate on the subject matter of the suit it has brought on behalf of the estate.").  TKD has appeared and advocated for Mishmeret and Shapira in this bankruptcy proceeding.  The Court should not now permit TKD to switch allegiances and represent the Trustee instead.  *See Vebeliunas*, 231 B.R. at 188 (holding trustee's counsel disqualified where counsel "attack[ed] the debtor's credibility, thereby demonstrating a complete lack of impartiality with respect to anything having to do with him.").

34.     Given the adverse interests of TKD's clients in this case, and these same clients' adverse interests and relentless, harmful conduct towards the Debtor and its estate, the Application must be denied.

**2.     TKD is Unable to Bring Valuable Causes of Action on the Estate's Behalf.**

35.     "Consistent with . . . section 327(a), a lawyer cannot represent a trustee for the purpose of investigating the alleged wrongdoing of another, valuable client." *Granite Partners*, 219 B.R. at 37 (citation omitted).

36.     The estate here possesses valuable causes of action against Shapira and Mishmeret which TKD – and the Trustee as its partner – due to its history representing these parties in this case, is plainly unable to evaluate and prosecute on an impartial basis.

37.     Some such causes of action arise from acts undertaken by Mishmeret and Shapira *after the Petition Date, while TKD represented them*.  As discussed above, Shapira's statement to the Israeli press concerning Gadot resulted in the appointment of a receiver and a forced sale at a loss of tens of millions of dollars to the estate.  Additionally, as alleged in the Third Party Complaint, Mishmeret and Shapira caused extensive harm to the Debtor and its estate in connection with the Ethanol Project.

38.     The Trustee and his counsel must be unbiased to properly investigate these asserted causes of action and commence corresponding litigation.  Due to TKD's representation

14

## APP-133

of Shapira and Mishmeret, TKD's impartiality and ability to investigate claims against those

parties are compromised, which requires denial of the Application.

**B.      The Court Should Remove the Conflicted Trustee For Cause.**

39.     By this Cross-Motion, pursuant to section 324 of the Bankruptcy Code and Rule

9014 of the Federal Rules of Bankruptcy Procedure, the Controlling Shareholders request entry

of an order removing Alex Spizz as chapter 7 Trustee for cause, because TKD's foregoing

conflicts are imputed to the Trustee, who is now a partner of TKD.

40.     Section 324 of the Bankruptcy Code provides that "[t]he court, after notice and a

hearing, may remove a trustee, other than the United States trustee, or an examiner, for cause."

11 U.S.C. § 324(a).  "Cause has been found to exist, *inter alia,* where the trustee is not

disinterested, and where the trustee fails to perform his or her duties, or unreasonably delays in

the performance of those duties."  *In re Lundborg*, 110 B.R. 106, 108 (Bankr. D. Conn. 1990)

(citations omitted).[23]  Here, the Trustee is irreconcilably conflicted and has failed -- and will

continue to fail -- to perform his duty to protect the estate.

**1.      The Trustee Joining TKD Requires His Removal.**

41.     As an initial matter, a trustee should be removed when, as here, the trustee joins a

law firm that represented interests adverse to the debtor in the debtor's bankruptcy case.  For

example, in *In re Paolino*, the court found that by joining a law firm that had represented a

defendant in an action commenced by the debtor, the trustee rendered himself ineligible to serve

as trustee.  80 B.R. 341, 345 (Bankr. E.D. Pa. 1987).  Here, the Trustee is a partner at TKD,

---

[23]      Although the Trustee will likely argue that some courts indicate an inclination not to remove a trustee absent fraud or actual injury, *see In re Freeport Italian Bakery, Inc.*, 340 F.2d 50, 54 (2d Cir. 1965), "[s]uch harm may simply be the loss of creditor confidence to the point that discord threatens the estate.  Thus, these courts will consider the best interests of the bankruptcy estate.  If it would suffer more from the discord created by the present trustee than would be suffered from a change of administration, the removal of the trustee is necessarily the better solution."  *Dye v. Brown (In re AFI Holding, Inc.)*, 355 B.R. 139, 149 (B.A.P. 9th Cir. 2006) *aff'd. and adopted*, 530 F.3d 832 (9th Cir. 2008) (quoting COLLIER ON BANKRUPTCY, ¶ 324.02, at 324–5 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2006)) (additional citations and quotation marks omitted).

which represents (or at best represented) adverse interests to the Debtor and its estate in this case. This requires the Trustee's removal.

42.     The Court has already noted that the Trustee "created the impression" that he favors Mishmeret and Shapira.[24]  There can be no doubt that the Trustee joining TKD further taints his independence and impartiality.  The Trustee here must be uncompromised to protect the estate and to investigate and prosecute all estate causes of action – including, and especially, those enumerated in the Third Party Complaint – against Mishmeret and Shapira.  However, as discussed above, TKD is conflicted by its representation of Mishmeret in connection with the Litigation Financing that remains outstanding, and by its representation of Shapira and Mishmeret, who have been adverse to the Debtor and its estate throughout – and long before – this bankruptcy case.  As a partner at TKD, the Trustee would hardly assert causes of action against Mishmeret and Shapira, his new firm's former clients in this case.  *See In re Micro-Time Mgmt. Sys., Inc.*, 102 B.R. 602, 607 (Bankr. E.D. Mich. 1989) (removing trustee because "[a]lthough the trustee and the accountants for the trustee are not prepetition creditors of the estate, [trustee's] work for Comerica does present a potential, if not an actual, conflict of interest. Comerica was a major creditor of [debtor].").  Since the Trustee cannot act in the estate's best interests or adequately protect the estate from Mishmeret and Shapira, he must be disqualified and removed.

**2.     The Trustee Has Failed to Bring Valuable Claims on Behalf of the Estate.**

43.     Even if the Trustee joining TKD did not require his removal (and it does) he should be disqualified for failing to perform his duties.  The Third Party Complaint is replete with allegations against Mishemeret and Shapira (among others) that, if pursued by the estate,

---

[24]     *See* Stay Decision at 21.

would result in recoveries of tens of millions of dollars by the estate.  These causes of action arise from Mishmeret's and Shapira's egregious, tortious conduct that caused tremendous harm – both prepetition and postpetition – to the Debtor and its estate.  The estate suffered a devastating prepetition loss of its 25% interest in the valuable Ethanol Project.  The estate also suffered tremendous postpetition harm as a result of the divestment of its interest in Gadot, which transpired under the Trustee's watch, and for which the Trustee has not pursued any remedy.  Unless the Trustee is removed, it is a certainty that Mishmeret's and Shapira's prepetition conduct will go unchallenged by this estate fiduciary.

**3.  The Trustee is in Violation of the Court's Discovery Order.**

44.  Pursuant to the Discovery Order, the Private Information obtained by the Trustee during discovery may not be disclosed to "***Shapira . . . or any of its employees, representatives or agents***."[25]  Having represented Shapira, TKD, and by imputation, the Trustee, are prohibited from viewing the Private Information.  That alone merits the Trustee's removal.  The Trustee must be removed to ensure that the Private Information does not land in Shapira's hands, which could have disastrous ramifications for the parties producing such documents, who are entitled to protections of privacy.  *See MF Global*, 464 B.R. at 605 n.10. (stating there is a "presumption that 'associated' attorneys share client confidences") (citations and internal quotation marks omitted).

**<u>NOTICE</u>**

45.  Notice of this Objection and Cross-Motion will be given in accordance with this Court's Order Granting Chapter 7 Trustee's Motion to Limit Notice and to Establish Case Management Procedures, entered on September 12, 2013 [Docket No. 342].

---

[25]  Discovery Order ¶ 4 (emphasis added).

17

**APP-136**

46.     No previous application for the relief sought herein has been made to this Court or any other court.

## **CONCLUSION**

WHEREFORE the Objectors respectfully request that the Court (i) deny the Trustee's Application to retain TKD as substitute counsel; (ii) remove the Trustee and direct the Office of United States Trustee to select a replacement Chapter 7 trustee; and (iii) grant the Objectors such other and further relief as it deems just and proper.

Dated:  April 28, 2015
        New York, New York

KASOWITZ, BENSON, TORRES
 & FRIEDMAN LLP

 _/s/ Daniel A. Fliman_____
David M. Friedman (DFriedman@kasowitz.com)
Daniel A. Fliman (DFliman@kasowitz.com)
Nii-Amar Amamoo (NAmamoo@kasowitz.com)
1633 Broadway
New York, New York 10019
Telephone:  (212) 506-1700
Facsimile:  (212) 506-1800

*Counsel for Yosef A. Maiman and*
*Merhav (M.N.F.) Limited*

APP-137

COLE SCHOTZ, P.C.
900 Third Avenue, 16th Floor
New York, NY 10022
Phone: (212) 752-8000
Michael D. Sirota, Esq.
Steven L. Klepper, Esq.
*Attorneys for Irit Eluz*

**Hearing Date and Time: TBD**
**Objection Deadline Date and Time: TBD**

## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>AMPAL-AMERICAN ISRAEL<br>CORPORATION,<br>               Debtor. | Chapter 7<br><br>Case No. 12-13689 (SMB) |

### JOINDER OF IRIT ELUZ IN SUPPORT OF YOSEF A. MAIMAN AND THE CONTROLLING SHAREHOLDERS' (I) OBJECTION TO THE RETENTION OF TARTER KRINSKY & DROGIN LLP AS SUBSTITUTE COUNSEL TO THE TRUSTEE AND (II) MOTION TO DISQUALIFY ALEX SPIZZ AS CHAPTER 7 TRUSTEE

Irit Eluz ("Eluz"), by and through her undersigned counsel, respectfully submits this joinder to *Yosef A. Maiman and the Controlling Shareholders' (I) Objection to the Retention of Tarter Krinsky & Grogin LLP as Substitute Counsel to the Trustee and (II) Motion to Disqualify Alex Spizz as Chapter 7 Trustee* (the "Objection and Motion"), and in further support thereof respectfully states as follows:

The arguments made in the Objection and Motion are directly applicable to Eluz. Eluz concurs with the arguments and assertions set forth in the Objection and Motion, and hereby joins the Objection and Motion and incorporates those arguments and assertions herein by reference.[1]

---

[1] Eluz reserves all rights to assert arguments not raised in the Objection and Motion, and to be heard before this Court with respect to any such arguments.

APP-138

WHEREFORE, Eluz respectfully requests that the Court (i) deny the Chapter 7 Trustee's application to retain Tarter Krinsky & Grogin LLP as substitute counsel; (ii) remove the Chapter 7 Trustee and direct the Office of the United States Trustee to select a replacement Chapter 7 Trustee; and (iii) grant such other and further relief as this Court deems just and proper.

Date:  New York, New York
      April 29, 2015

                        Respectfully Submitted,

                        COLE SCHOTZ, P.C.

                        By: */s/ Steven L. Klepper*
                        Michael D. Sirota, Esq.
                        Steven L. Klepper, Esq.
                        900 Third Avenue, 16th Floor
                        New York, NY  10022
                        Phone: (212) 752-8000
                        *Attorneys for Irit Eluz*

2

## APP-139

TARTER KRINSKY & DROGIN LLP
*Proposed Substitute Counsel to the Chapter 7 Trustee*
1350 Broadway, 10th Floor
New York, New York 10018
Tel (212) 216-8000
Fax (212) 216-8001
Arthur Goldstein, Esq.
(agoldstein@tarterkrinsky.com)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re                                                             Chapter 7

AMPAL-AMERICAN ISRAEL CORPORATION        Case No. 12-13689 (SMB)

                          Debtor

------------------------------------------------------------X

**SUPPLEMENTAL DECLARATION OF ARTHUR GOLDSTEIN PURSUANT TO
BANKRUPTCY RULE 2014 ON BEHALF OF TARTER KRINSKY & DROGIN
LLP AS PROPOSED SUBSTITUTE COUNSEL TO TRUSTEE AND
DISCLOSURE PURSUANT TO BANKRUPTCY CODE SECTIONS 327 AND 329
AND BANKRUPTCY RULE 2014**

Arthur Goldstein, Esq., declares under penalty of perjury, as follows:

1.      I am an attorney duly licensed to practice law in the State of New York.  I am
admitted and in good standing to practice before the United States District Courts for the
Southern, Eastern and Northern Districts of New York.

2.      I am a counsel with the firm of Tarter Krinsky & Drogin LLP ("TKD") which
maintains an office at 1350 Broadway, New York, New York 10018.

3.      I make this supplemental declaration in further support of the application (the
"Application") of Alex Spizz, the Chapter 7 Trustee (the "Trustee") of Ampal-American Israel
Corporation (the "Debtor") to retain TKD as his substitute counsel in this case and to reply to the

APP-140

alleged conflict issues raised by Yosef A. Maiman ("Maiman") and the controlling shareholders' (the "Objectors") (i) objection to the retention of Tarter Krinsky & Drogin LLP as substitute counsel to the Trustee and (ii) Motion to Disqualify Alex Spizz as Chapter 7 Trustee dated April 28, 2015 (the "Objection") [Docket No. 576].[1]

4.      The Objectors have alleged that there is a conflict in TKD's representation of the Trustee based upon TKD's former representation of Mishmeret-Trust Company Services Ltd. ("Mishmeret") and Shapira & Co. ("Shapira").  As set forth below, there is neither a conflict of interest nor a potential conflict of interest in this case as a result of TKD's prior representation of Mishmeret and Shapira.

5.      As set forth in my Declaration pursuant to Bankruptcy Rule 2014 dated April 17, 2015 [Doc. No. 573-2], TKD no longer represents Mishmeret or Shapira.  TKD first commenced providing services to Mishmeret and Shapira in June, 2013.  TKD has not provided any services to either party since July, 2014.

6.      The Objectors also assert that TKD's representation of Mishmeret as a post-petition lender to the Debtor's estate is a conflict of interest.  TKD's engagement relating to the litigation funding agreement was limited.  TKD did not file any papers in support of the Trustee's motion for authority to enter into a litigation financing agreement with indenture trustees Hermetic Trust (1975) Ltd. ("Hermetic"), Reznik Paz Nevo R.P.N. Trusts 2007 Ltd. ("PAZ") and Mishmeret [Doc. No. 407].  Further, TKD was not involved in the negotiation of the subject litigation funding agreement dated as of May 20, 2014 (the "Funding Agreement") and executed the Funding Agreement strictly as an accommodation to Mishmeret.

---

[1]  On April 29, 2015 Irut Eluz filed a joinder in support of the Objection. [Doc. No. 577].

## APP-141

7.      The Court granted the Trustee's Motion for Authority to Enter into the Funding Agreement by Order dated June 24, 2014 (the "Order") [Doc. No. 429].

8.      The Order provided, inter alia, that the Indenture Trustees had the right to assign their rights and obligations under the Funding Agreement and the Order to Klimark Opportunity Fund L.P. ("Klimark") and Meitav Geinel & Pension Ltd. ("Meitav"), who were identified in the Funding Agreement as the funders of the litigation loan.  On June 25, 2014, (one day after the Order was entered), Hermetic, PAZ and Mishmeret assigned all of their rights and obligations under the Funding Agreement to Klimark and Meitav and thereafter  Klimark and Meitav funded the loan under the Funding Agreement. Mishmeret, as well as Hermetic and PAZ, never loaned any monies to the Debtor under the Funding Agreement.

9.      I make this declaration under penalty of perjury in accordance with Bankruptcy Rule 2014(a) and 9011(b).

Dated: New York, New York
        May 1, 2015

Arthur Goldstein

**APP-142**

Hearing Date: May 21, 2015
Hearing Time: 10:00 A.M.

TARTER KRINSKY & DROGIN LLP
Proposed Substitute Counsel to the Chapter 7 Trustee
1350 Broadway, 10th Floor
New York, New York 10018
Tel (212) 216-8000
Fax (212) 216-8001
Alex Spizz, Esq.
Arthur Goldstein, Esq.
Jill Makower, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re

AMPAL-AMERICAN ISRAEL CORPORATION

                          Debtor.
-----------------------------------------------------------X

Chapter 7
Case No. 12-13689 (SMB)

**AFFIDAVIT OF ALEX SPIZZ AS TRUSTEE IN RESPONSE TO THE (1) OBJECTION FILED BY YOSEF A. MAIMAN AND THE CONTROLLING SHAREHOLDERS TO THE RETENTION OF TARTER KRINSKY & DROGIN LLP IN PLACE OF SPIZZ COHEN & SERCHUK, P.C. AS SUBSTITUTE COUNSEL TO THE TRUSTEE; AND (2) CROSS-MOTION TO DISQUALIFY ALEX SPIZZ AS CHAPTER 7 TRUSTEE**

STATE OF NEW YORK    )
                         : ss.:
COUNTY OF NEW YORK  )

    Alex Spizz, being duly sworn, deposes and says:

    1.    This affidavit is submitted in response to the (1) Objection of Yosef A. Maiman ("Maiman") And The Controlling Shareholders ("Objectors") To The Retention of Tarter Krinsky & Drogin LLP ("TKD") In Place of Spizz Cohen & Serchuk, P.C. ("SCS") As Substitute Counsel To The Trustee; And (2) Cross-Motion To Disqualify Alex Spizz As Chapter 7 Trustee (the "Objection").

## APP-143

2.      I am the Chapter 7 Trustee of Ampal-American Israel Corporation ("Ampal" or the "Debtor"), the above captioned debtor.  I was elected as Chapter 7 Trustee on May 20, 2013 pursuant to §702 of the Bankruptcy Code.  At the time of my election, I was a partner at the firm of Nachamie, Spizz, Cohen & Serchuk, P.C. which later became known as SCS.  SCS thereafter was retained as counsel for the Trustee.

3.      Before joining TKD, I was of course aware that TKD had represented Mishmeret-Trust Company Services Ltd. ("Mishmeret") in connection with an application to lift the automatic stay so that Mishmeret could proceed in the District Court of Tel Aviv to enforce its rights as trustee to a sinking fund [Doc. No. 357], as well as in connection with a motion for the approval of a Litigation Financing Agreement [Doc. No. 407].  I was further aware that TKD had represented Mishmeret, Shapira & Co. and Ofer Shapira (together, "Shapira"), in connection with a motion brought by several of the Debtor's former officers seeking damages based upon a violation of the automatic stay as well as directing myself as Chapter 7 Trustee to discharge Shapira as attorney for the Debtor's non-debtor subsidiaries ("Stay Violation Motion") [Doc. No. 352].

4.      I was advised by Scott Markowitz, the partner at TKD in charge of the Mishmeret and Shapira engagement, that TKD's representation of Mishmeret and Shapira was limited to the matters set forth above and that Mishmeret and Shapira were no longer clients of TKD because the specific matters were resolved. Markowitz further advised that the last time TKD rendered services to either Mishmeret or Shapira was in July of 2014.

5.      This was further evidenced by the fact that when Maiman and his company Merhav (M.N.F.) Ltd. ("Merhav") filed a Third Party Complaint against Mishmeret, Shapira and

## APP-144

others on November 24, 2014,[1] all of the third party defendants including Mishmeret and Shapira were now represented by Akin, Gump, Strauss, Hauer and Feld, LLP ("Akin Gump").

6. Prior to making a decision about joining TKD, I had a conversation with the Office of the United States Trustee. I was advised by the U.S. Trustee's Office that as long as there was no current representation of Mishmeret or Shapira by TKD, the Office of the United States Trustee would not have an objection to my joining TKD as partner and subsequently retaining TKD as substitute counsel for SCS. I would like to note that neither the Office of the United States Trustee nor anyone other than the Objectors have filed an objection to TKD's retention.

7. As a further precaution prior to joining TKD, a conflicts search was conducted, which revealed that TKD had not represented any parties in connection with the Ampal Estate other than Mishmeret and Shapira.

8. I also reviewed the Second Circuit's decision in In re *AroChem Corporation*, 176 Fed. 3d 610 (1999) which made it clear that §327(a) of the Bankruptcy Code is to be read in the present tense and that proposed counsel for a trustee will only be disqualified if it presently holds or represents an interest adverse to the estate, notwithstanding any interest it may have held or represented in the past.

9. Based upon my discussions with Scott Markowitz and the Office of the United States Trustee, as well as the fact that Akin Gump was currently representing both Mishmeret and Shapira and that TKD was no longer representing Shapira and Mishmeret, I decided to join TKD as a partner. Once joining TKD I then sought to retain TKD as substitute counsel for the Trustee.

---

[1] Adv. Pro. No. 14-02385 (SMB) [Doc. No. 8].

## APP-145

### A. There Is No Actual Conflict of Interest

10.     For the reasons set forth in TKD's response to the Objection and the accompanying memorandum of law, there is no actual conflict of interest that would prevent TKD from representing the Trustee in the Ampal Chapter 7 case.

### B. The Supplemental Order Has Not Been Violated

11.     The Objectors contend that the mere joining of TKD by the Trustee and two (2) other lawyers from my firm *ipso facto* violates the Stipulation and Agreed Order concerning Trustee's access to Debtor's files, books and records, dated February 6, 2014 (Doc. No. 395) ("Supplemental Order"). The Supplemental Order states in ¶ 4:

> "Notwithstanding anything to the contrary contained herein, under no circumstances shall the Trustee or any Trustee representative disclose any Private Information to Ofer Shapira, the Shapira & Co. law firm, or any of its employees, representatives or agents."

TKD is not an employee, representative or agent of Ofer Shapira or his law firm. Paragraph 4 of the Supplemental Order, like §327(a) of the Bankruptcy Code, is written in the present tense. Assuming that TKD was a representative of Shapira in the past, it is no longer a representative and has not been a representative since January of 2014.[2]

After joining TKD, I received an email from Dan Fliman, which stated:

> "I see that Alex and Arthur have Tarter Krinsky - - Gents, congrats on the move. However, this creates complications that we need to discuss ASAP. Tarter represents Shapira & Co. in the Chapter 7 case and ¶ 4 of the December 5, 2014 Stipulation expressly prohibits any private information from being shared with representatives or agents for Shapira & Co."

The next day I responded as follows:

> "Dan, Tarter Krinsky no longer represents Shapira & Co. The engagement was limited to defending the motion you brought for allegedly

---

[2]   The only matter in which TKD represented Shapira was the Stay Violation Motion. TKD's representation of Shapira terminated after this Court's Decision of December 16, 2013 and the subsequent entry of an Order in accordance with that Decision.

## APP-146

violating the stay, which was denied. That being said, please be assured
that everyone at TKD is aware of the prohibition on sharing private
information of the D&Os with Ofer Shapira contained in the Stipulation &
Order, and I can assure you as Trustee the terms of the Order including
those relating to Ofer Shapira will be complied with."

Dan Fliman responded as follows:

"Thanks Alex. And does TKD still represent any of the bondholders or
trustee with respect to the Ampal case?"

To which Scott Markowitz of TKD responded as follows: "No."

A copy of the email chain is annexed hereto and marked as **Exhibit "A"**.

12.    The Private Information referred to in the Supplemental Order which was given to

the Trustee by the former officers and directors of Ampal is contained on a separate hard drive

and is in no way part of or connected to TKD's computer records and files. The only person who

has had access to the hard drive since coming over to TKD has been Arthur Goldstein. The hard

drive is kept under lock and key in his office. For the avoidance of doubt TKD has established a

procedure commonly referred to as a "Ethical Wall" whereby the only persons who are allowed

to access to the hard drive, which contains the Private Information as set forth in the

Supplemental Order, are Arthur Goldstein, Jill Makower and myself. These are the same

individuals who had access to the information previously at SCS.

13.    No Private Information has been disclosed to Shapira, nor has there been any

allegation that Private Information covered under the Supplemental Order has been disclosed to

Shapira in violation of the Supplemental Order.

14.    As Trustee I represent to this Court that the terms and conditions of the

Supplemental Order as well as all other orders of the Court have been and will continue to be

complied with.

## APP-147

### C.  Mishmeret Is Not A Post-Petition Lender To The Estate

15.  While it is true that Mishmeret was one of the parties to the Litigation Financing Agreement ("LFA") dated May 20, 2014, the LFA as well as the Order Approving the LFA [Doc. No. 429] contemplated that Mishmeret and the other Indenture Trustees would have the right to assign their rights and obligations under the LFA to Klirmark Opportunity Fund L.P. ("Klirmark") and Meitav Dash Gemel& Pension Ltd.("Meitav")

16.  On June 25, 2014, the day after the Order approving the litigation financing was entered, an amendment to the LFA was executed whereby all the rights and obligations of the Indenture Trustees under the LFA were assigned to Klirmark and Meitav which then funded the entire $1,500,000 loan by each paying $750,000.  The lenders under the LFA are Klirmark and Meitav and not Mishmeret as claimed by the Objectors.  A copy of the Amendment is annexed hereto and marked as **Exhibit "B"**.  TKD does not and has never represented either Klirmark or Meitav.

### D.  There Are No Valuable Causes of Action Against Mishmeret and Shapira Which The Trustee Has Declined To Pursue

17.  The Objectors contend that Mishmeret and Shapira made untrue and defamatory statements against Maiman and the other officers and directors of the Debtor to the Israeli press. They further allege that as the result of the statements the Debtor was driven into bankruptcy and potential equity partners in Maiman's Colombia Ethanol Project were dissuaded from carrying out their planned investments thus preventing the closing of financing that was already negotiated, thereby derailing the entire Colombia Ethanol Project.  They further contend that this in turn caused the Debtor to lose a potential twenty five (25%) percent interest in the Ethanol Project.

APP-148

18.     Nowhere do these alleged claims appear in any of the Debtor's bankruptcy filings. The Local Rule 1007-2 Declaration of Irit Eluz, the Chief Financial Officer and Senior Vice President of the Debtor [Doc. No. 2] makes no reference to these claims when describing the reasons for the Debtor's Chapter 11 filing.

19.     The Debtor's Schedules do not list any causes of action against Mishmeret or Shapira [Doc. No. 37].

20.     Nor do the Objectors claim that they presented facts or evidence supporting these alleged claims to the Trustee or that they requested the Trustee to take appropriate action on behalf of the Estate to enforce the claims. In addition, the Objectors did not seek permission of this Court to pursue claims that were valuable to the Estate and that the Trustee had failed to pursue.

21.     The first time that I as Trustee learned of any alleged claims concerning interference with the financing for the Colombia Ethanol Project, as a result of the actions of others, was when Maiman filed his proof of claim on September 15, 2014. A copy of Maiman's proof of claim is annexed hereto and marked as **Exhibit "C".**

22.     Maiman alleges in his proof of claim, not that the Estate has valuable claims against Shapira and Mishmeret as a result of actions interfering with the Colombia Ethanol Project, but rather that Maiman and his company Merhav (M.N.F.) Ltd. ("Merhav") have claims against Ampal and the Trustee for which they are entitled to compensation.

23.     The next time the issue of tortious interference by Bondholders and Shapira is raised by Maiman and Merhav was November 24, 2014 when they filed their Answer to Complaint, brought by Merhav Ampal Group, Ltd. ("MAG"), a subsidiary of the Debtor against Maiman and Merhav on a $20,000,000 Note and Unconditional Guaranty. A copy of the Answer

## APP-149

to Complaint is annexed hereto and marked as **Exhibit "D"**. Maiman in the fifth affirmative defense again asserts that as a result of the Bondholders' tortious interference and alleged influence over the Trustee, the Bondholders, as well as the Trustee and MAG are responsible for blocking the Colombia Ethanol Project.

24.     On November 24, 2014, Merhav and Maiman filed a Third Party Complaint in MAG's action under the Note and Unconditional Guaranty against the three Indenture Trustees including Mishmeret and Shapira. Again Maiman alleges that he and Merhav were damaged by the statements made by the Indenture Trustees and Shapira to the Israeli press. In the Third Party Complaint, Maiman and Merhav seek money damages against Shapira and the Indenture Trustees as well as an order disallowing their proofs of claim filed in the Ampal bankruptcy proceeding. A copy of the Third Party Complaint is annexed hereto and marked as **Exhibit "E"**.

25.     As Trustee, I directed MAG, the Debtor's subsidiary, to commence an action against Merhav on a $20,000,000 Promissory Note, and Maiman on his Unconditional Guaranty of that Note. That claim is in excess of $25,000,000. I have consulted with Troutman Sanders, the Trustee's special litigation counsel, and we have concluded that the claims against Merhav and Maiman on the Note and Unconditional Guaranty are very strong. We have also determined that the claims raised by Maiman and Merhav do not constitute defenses to the action on the Note and Unconditional Guaranty.

26.     The claims which the Objectors allege that the Trustee is not pursuing against Mishmeret and Shapira would potentially undermine MAG's claims against Merhav and Maiman on the Note and Unconditional Guaranty. It is also apparent to the Trustee and Troutman Sanders that Maiman is attempting to compel the Trustee to litigate uncertain and speculative claims against third parties in an attempt to damage the case on the Note and

APP-150

Unconditional Guaranty and thereby insulate himself and Merhav from liability. Simply put, Maiman seeks have the Trustee pursue these uncertain and speculative claims against others at the expense of the Trustee's claims against him and Merhav.

27. As Trustee, I have no reservations about pursuing claims against any parties that may potentially benefit the Ampal Estate. Soon after my election as Trustee, I pressed forward with claims on behalf of the Ampal Estate against the sinking funds that the Indenture Trustees were holding as certain security for the Debtor's performance under the prepetition indentures. I made it clear to all of the Indenture Trustees, including Mishmeret, that if an amicable resolution could not be reached, I was prepared to litigate the issue before the Bankruptcy Court. Following up on that warning, I had prepared an adversary proceeding against the Indenture Trustees including Mishmeret seeking a turnover of the sinking funds, as well as the avoidance and recovery of alleged preferential transfers. A copy of the draft complaint dated October 13, 2013, which was sent to the attorneys for each of the Indenture Trustees is annexed hereto and marked as **Exhibit "F"**. The causes of action regarding the sinking funds and alleged preferences were subsequently settled by a Stipulation between myself as Trustee and the Indenture Trustees, which was approved by this Court in an Order dated June 18, 2014 [Doc. No. 424]. While it is hard to know exactly how much influence the draft complaint had on the settlement, it was made clear to the Indenture Trustees that, as Trustee, I would pursue all causes of action on behalf of the Estate that I believed had merit, even against the largest creditors who were responsible for electing me Trustee.

28. The Objectors are seeking to disqualify TKD and remove me as Trustee for failing to pursue prepetition causes of action involving multiple jurisdictions throughout the world, which were not identified in any of the Debtor's bankruptcy filings and the existence of

APP-151

which the Trustee was never put on notice. Moreover, there is no specificity as to the claims in any of the filings with this Court. The Objectors do not state (i) what untrue and defamatory statements were made, (ii) when the defamatory statements were allegedly made, (iii) to whom the defamatory statements were made, (iv) when and how the alleged unknown investors in the Colombia Ethanol Project learned of the statements, (v) how these investors were influenced by the statements, or (vi) how the Objectors quantify the loss to the Debtor of its twenty five (25%) percent interest in a project that never got off the ground.

29.     The liability on the claims seems dubious at best, and the damages are highly speculative. If these claims represent a valuable asset to the Estate, why did Maiman not prosecute any of these claims when he was in control of the Debtor until May of 2013?

30.     As Trustee, I would be clearly violating my fiduciary duty and not exercising good business judgment by pursuing weak and speculative claims which on advice of counsel would clearly damage the strong claims that have been asserted against Maiman and Merhav on the Note and Unconditional Guaranty which are excess of $25,000,000.

31.     While in the exercise of my business judgement I believe it is better to pursue the strong claims on the Note and Unconditional Guaranty rather than weak claims which may undermine those claims, I continue to keep an open mind. A motion has been made by the third party defendants to dismiss the third party complaint. If this Court or any other court were to determine that there is merit to any of the claims raised by the third party complaint and that the Ampal Estate was damaged as a result, I would not hesitate to appoint special conflict counsel to investigate and if appropriate pursue those claims.[3]

---

[3] The statutes of limitation on the claims raised by Maiman and Merhav have a seven year statute of limitation in Israel. [Paragraph 18 and Exhibit 17 to the Declaration of Patrick M. Mott in Support of Third Party Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Third Party Complaint, dated February 26, 2015].

## APP-152

32.     The Objectors further claim that I as Trustee have also failed to pursue a claim against Shapira based upon the appointment of a receiver over Gadot Chemicals Tankers & Terminals Ltd. ("Gadot"), a wholly owned subsidiary of MAG.  Again there is no claim that the Objectors provided the Trustee with any notice of the alleged Gadot claim and request that I investigate and pursue if appropriate.

33.     Paragraph 25 of the Objection states:

> "As further alleged in the Third Party Complaint, the continued assault in the press against the Debtor, Mr. Maiman and Merhav persisted after the Petition Date, causing severe damage to the Debtor.  Most notably, in late 2013 Ofer Shapira announced to the Israeli press that the Bondholders intended to force a sale of Gadot (one of Ampal's portfolio companies). The very next day Israel Discount Bank nominated a receiver for Gadot's shares in an effort to try to recover financing it had made to acquire such shares.  The appointment of the receiver caused Ampal and the subsidiary to lose tens of millions of dollars in its investment in Gadot."

34.     In looking into this alleged claim, I determined that allegation is not borne out by the facts.  Israel Discount Bank ("IDB") had financed the acquisition of Gadot and held the shares of Gadot as security for its loan.  IDB applied to the Israeli District Court on December 6, 2012 for the appointment of Dror Vigdor and Gil Oren as receivers and a hearing was scheduled for December 25, 2012, a year before Shapira's announcement to the press.  An original copy of the IDB application in Hebrew, and a translated copy is annexed hereto and marked as **Exhibit "G"**.  In its application to the Israeli District Court, IDB listed various legal and factual grounds for the appointment of a receiver, none of which referred to announcements in the Israeli press by Bondholders or Shapira.  The application goes on to describe Ampal's efforts to sell Gadot for more than a year before the December 6, 2012 application.

35.     Gadot was eventually sold by the receiver for $73,300,000 but not until I, as Trustee, injected myself in the sale process.  The sale was approved by the Israeli District Court

## APP-153

on February 25, 2014 having found that the sale price was well within the estimate of fair value which had been established between $55,000,000 – $76,000,000. Annexed hereto and marked as **Exhibit "H"** is a Decision of the Israeli District Court describing the sale process and approving the sale.

### E.    Conflicts Counsel

36.    In the event that the Trustee determines, in the exercise of his business judgment, that the Estate may have valuable claims against Shapira or Mishmeret, or if there develops a need for a contest with regard to the Mishmeret proof of claim, I would immediately retain conflict counsel to investigate and/or prosecute any claims or contested matters involving Mishmeret or Shapira, the former clients of TKD.

### F.    Ethical Wall

37.    Notwithstanding the fact that there is no conflict of interest, out of an abundance of caution, TKD on May 8, 2015 established an Ethical Wall within the firm. The Ethical Wall prevents any TKD attorneys or paralegals, who were involved in the Mishmeret and/or Shapira representations, from having access to any of TKD's electronic files involving Ampal. Likewise the SCS attorneys, who came over to TKD, have been blocked from having access to any of the electronic files having to do with the Mishmeret and/or Shapira representations. An actual wall has been established blocking access to electronic files and documents. In addition, none of the TKD attorneys or paralegals, who were involved in the Shapira and/or Mishmeret representations, will be involved in representing the Trustee. Only Alex Spizz, Arthur Goldstein, Jill Makower and any other TKD attorneys who were not involved in the Mishmeret and/or Shapira representations will be allowed to represent the Trustee under this retention.[4]

---

[4]  Former TKD attorneys who worked on the Mishmeret and/or Shapira representations have provided services to the Trustee limited to responding to the Objection raised to TKD's retention.

APP-154

## **CONCLUSION**

38.     For the reasons set forth herein and the Response of TKD, as well as the

accompanying Memorandum of Law, it is respectfully requested that the Objection to the

retention of TKD as counsel for the Trustee be overruled and the cross-motion to remove me as

Trustee be in all respects denied.

Alex Spizz

Sworn to before me this 14
day of May, 2015

Notary Public

ARTHUR GOLDSTEIN
Notary Public, State of New York
No. 4653340
Qualified in Rockland County
Commission Expires March 30, 20 17

APP-155

**EXHIBIT "A"**

APP-156

## Alex Spizz

| | |
|---|---|
| **From:** | Scott Markowitz |
| **Sent:** | Tuesday, April 14, 2015 8:13 PM |
| **To:** | Daniel A. Fliman |
| **Cc:** | Alex Spizz; Dantzler, David; Andrew R. Kurland; agoldstein@tarterkrinsey.com; Campo, John P.; Goodman, Brett D.; Delpino, Reyko E.; Robert A. Wolf; Deborah Piazza; Rocco A. Cavaliere |
| **Subject:** | Re: Spizz v. Eluz - Confidential Protective Order and Search Terms |

No

Sent from my iPhone

> On Apr 14, 2015, at 8:10 PM, Daniel A. Fliman <DFliman@kasowitz.com> wrote:
>
> Thanks, Alex.  And does TKD still represent any of the Ampal bondholders or trustees with respect to the Ampal case?
>
>
>
> On Apr 14, 2015, at 7:15 PM, Alex Spizz <aspizz@tarterkrinsky.com<mailto:aspizz@tarterkrinsky.com>> wrote:
>
>
>
> Dan
>
> Tarter Krinsky no longer represents Shapira & Co. The engagement was limited to defending the motion you brought for allegedly violating the stay which was denied. That being said please be assured that everyone at TKD is aware of the prohibition on sharing private information of the D&Os with Ofer Shapira contained in the stipulation & order and I can assure you as Trustee the terms of the order including those relating to Ofer Shapira will be complied with.
>
>
>
> Regards,
>
> Alex
>
> _____
> From: Daniel A. Fliman [DFliman@kasowitz.com<mailto:DFliman@kasowitz.com>]
> Sent: Monday, April 13, 2015 6:26 PM
> To: Dantzler, David; Andrew R. Kurland
> Cc: agoldstein@tarterkrinsey.com<mailto:agoldstein@tarterkrinsey.com>; Alex Spizz; Campo, John P.; Goodman, Brett D.; Delpino, Reyko E.
> Subject: RE: Spizz v. Eluz - Confidential Protective Order and Search Terms
>
> I see that Alex and Arthur have joined Tarter Krinskey -- gents, congrats on the move.  However, this creates complications that we need to discuss ASAP.  Tarter represents Shapira & Co. in the Chapter 7 case and Paragraph 4 of the December 5, 2014 stipulation expressly prohibits any private information being shared with representatives or agents for Shapira & Co.
>

APP-157

# EXHIBIT "B"

**APP-158**

<u>First Amendment to a</u>
<u>Litigation Financing Agreement Executed May 20, 2014</u>

This First amendment (this "**Amendment**") to the Litigation Financing Agreement dated as of May 20, 2014 (the "**Agreement**") is made and entered into as of the June 25 2014, by and among AMPAL-AMERICAN ISRAEL CORP. (the "**Debtor**" or "**Ampal**"), by and through Alex Spizz, in his capacity as Chapter 7 trustee of (the "**Trustee**"), Merhav Ampal Group Ltd. ("**MAG**"), Hermetic Trust (1975) Ltd. ("**Hermetic**"), Reznik Paz Nevo R.P.N. Trusts 2007 Ltd. ("**Reznik**") and Mishmeret Trust Services Company Ltd. ("**Mishmeret**" and, together with Hermetic and Reznik, the "**Indenture Trustees**"), Klirmark Opportunity Fund L.P. (Cayman Islands limited partnership no, MC-31684, registered in Israel as a limited foreign partnership number 530233766) ("**Klirmark**") and Meitav Dash Gemel & Pension Ltd. (Israeli Corporation number 512065202) ("**Meitav**").

WHEREAS, the Parties to the Agreement wish to amend it, *inter-alia*, as to allow for the remittance of the Litigation Loan amount directly by Klirmark and Meitav as lenders instead of the Indenture Trustees;

NOW, THEREFORE, IN CONSIDERATION of the mutual covenants contained in this Amendment, and for other good and valuable consideration the receipt and adequacy of which are hereby acknowledged, the Parties agree as follows:

1. Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Agreement.
2. The Parties agree that all of the rights and obligations of the Indenture Trustees under the Agreement shall be borne by Klirmark and Meitav. After the execution of this Amendment, the Indenture Trustees shall have no duty or obligation under the Agreement.
3. The Litigation Loan amount shall be remitted to the Trustee by each of Klirmark and Meitav on the dates stipulated in the Agreement. Klirmark undertakes to provide $750,000 of the litigation loan and Meitav undertakes to provide $750,000 of the litigation loan.

285085 v2

## APP-159

4. The securities for repayment of the litigation loan as stated in section 12 of the Agreement, shall be provided by MAG to Klirmark and Meitav and registered in their name.

5. Section 17 shall be amended in such way that the Trustee/MAG shall provide the Indenture Trustees, in addition to Klirmark and Meitav, with monthly updates concerning the Malman Litigation.

6. It is hereby agreed that Klirmark's and Meitav's rights and obligations under the Agreement and with respect to the Litigation Loan, are several rights and obligations, according to their pro-rata portion in the Litigation Loan (as stipulated above), and not joint rights and obligations.

7. Except as expressly amended hereby, the terms and conditions of the Agreement shall remain in full force and effect.

8. This Amendment may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

   IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be duly executed by their respective authorized signatories as of the date first indicated above.

**APP-160**

| Klirmark Opportunity Fund L.P.<br><br>By: _____ | Meitav Dash Gemel & Pension Ltd.<br><br>By: _____ |
|---|---|
| Merhav Ampal Group Ltd.<br><br>By: _____<br>    Shlomi Kelsi, Director | Reznik Paz Nevo R.P.N. Trusts 2007 Ltd.<br><br>By: _____<br>    Mr. Yossi Reznik |
| Hermetic Trust (1975) Ltd.<br><br>By: _____<br>    Dan Offer, Adv. | Mishmeret Trust Services Company Ltd.<br><br>By: Mishmeret Trust Company LTD |
| Alex, Spizz, Chapter 7 Trustee of Ampal-American Israel Corp<br><br>By: _____<br>    Alex Spizz, Chapter 7 trustee | |

# APP-161

| | |
|---|---|
| Klirmark Opportunity Fund L.P.<br><br>By: _____ | Meitav Dash Gemel & Pension Ltd.<br><br>By: _____ |
| Merhav Ampal Group Ltd.<br><br>By: _____<br>    Shlomi Kelsi, Director | Reznik Paz Nevo R.P.N. Trusts 2007 Ltd.<br><br>By: _____<br>    Mr. Yossi Reznik |
| Hermetic Trust (1975) Ltd.<br><br>By: _____<br>    Dan Offer, Adv. | Mishmeret Trust Services Company Ltd.<br><br>By: _____ |
| Alex, Spizz, Chapter 7 Trustee of Ampal-American Israel Corp<br><br>By: _____<br>    Alex Spizz, Chapter 7 trustee | |

**APP-162**

| Klirmark Opportunity Fund L.P.<br><br>By: _____ | Meitav Dash Gemel & Pension Ltd.<br><br>By: _____ |
|---|---|
| Merhav Ampal Group Ltd.<br><br>By: _____<br>　　　Shlomi Kelsi, Director | Reznik Paz Nevo R.P.N. Trusts 2007 Ltd.<br><br>By: _____<br>　　　Mr. Yossi Reznik |
| Hermetic Trust (1975) Ltd.<br><br>By: _____<br>　　　Dan Offer, Adv. | Mishmeret Trust Services Company Ltd.<br><br>By: _____ |
| Alex, Spizz, Chapter 7 Trustee of Ampal-American Israel Corp<br><br>By: _____<br>　　　Alex Spizz, Chapter 7 trustee | |

285085 v2

3

**APP-163**

| Klirmark Opportunity Fund L.P. By: | Sheltav Dash Gemel & Pension Ltd. By: _____ |
| Merhav Ampal Group Ltd.  By: _____  Shlomi Kelsi, Director | Reznik Paz Nevo R.P.N. Trusts 2007 Ltd.  By: _____  Mr. Yossi Reznik |
| Hermetic Trust (1975) Ltd.  By: _____  Dan Offer, Adv. | Mishmeret Trust Services Company Ltd.  By: _____ |
| Alex, Spizz, Chapter 7 Trustee of Ampal-American Israel Corp  By: _____  Alex Spizz, Chapter 7 trustee | |

**APP-164**

| Klirmark Opportunity Fund L.P. <br><br> By: _____ | Meitav Dash Gemel & Pension Ltd. <br><br> By: _____ |
|---|---|
| Merhav Ampal Group Ltd. <br><br> By: _____ <br>      Shlomi Kelsi, Director | Reznik Paz Nevo R.P.N. Trusts 2007 Ltd. <br><br> By: _____ <br>      Mr. Yossi Reznik |
| Hermetic Trust (1975) Ltd. <br><br> By: _____ <br>      Dan Offer, Adv. | Mishmeret Trust Services Company Ltd. <br><br> By: _____ |
| Alex, Spizz, Chapter 7 Trustee of Ampal-American Israel Corp <br><br> By: _____ <br>      Alex Spizz, Chapter 7 trustee | |

285085 v2           3

APP-165

# EXHIBIT "C"

# APP-166

B 10 Modified (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK | | PROOF OF CLAIM |
|---|---|---|
| Name of Debtor: Ampal-American Israel Corporation | Case Number: 12-13689 | |

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
    Yosef A. Maiman

Name and address where notices should be sent:

Yosef A. Maiman
c/o Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway, New York, New York 10019
Attn: David M. Friedman, Daniel A. Fliman

Telephone number: (212) 506-1700      email: DFriedman@kasowitz.com

Name and address where payment should be sent (if different from above):
Yosef A. Maiman
33 Havazelet Hasharon St.
Herzliya, Israel

Telephone number:    email:

☐ Check this box if this claim amends a previously filed claim.

Court Claim Number:_____

(*If known*)

Filed on:_____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars

**1. Amount of Claim as of Date Case Filed:** $____ Unknown

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** See Attachment
    (See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:**
__ __ __ __

**3a. Debtor may have scheduled account as:**

(See instruction #3a)

**3b. Uniform Claim Identifier (optional):**

(See instruction #3b)

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate ☐ Motor Vehicle ☐ Other
Describe:
Value of Property: $_____   Annual Interest Rate_____% ☐ Fixed ☐ Variable
                                                    (when case was filed)
Amount of arrearage and other charges, as of the time case was filed, included in secured claim,
if any: $_____                    Basis for perfection:_____

Amount of Secured Claim: $_____      Amount Unsecured: $_____

**6. Claim Pursuant to 11 U.S.C. § 503(b)(9):**
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before February 20, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim. $_____               (See instruction #6)

**7. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

**8. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. (*See instruction #8, and the definition of "redacted".*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER

**9. Signature:** (See instruction #9) Check the appropriate box.
☒ I am the creditor.   ☐ I am the creditor's authorized agent.   ☐ I am the trustee, or the debtor, or   ☐ I am a guarantor, surety, indorser, or other codebtor.
                       (Attach copy of power of attorney, if any)
                                              (See Bankruptcy Rule 3004.) (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:   Yosef A. Maiman_____
Title:_____               X _[signature]_        9/15/2014
Company:_____                (Signature)          (Date)
Address and telephone number (if different from notice address above):

Telephone number:              Email:

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

Amount entitled to priority:

$ _____

* *Amounts are subject to adjustment on 4-1-13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

COURT USE ONLY

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## APP-167

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 7 |
| AMPAL-AMERICAN ISRAEL CORP., | Case No. 12-13689 (SMB) |
| Debtor. | |

**ATTACHMENT TO SUPPLEMENTAL**
**PROOF OF CLAIM OF YOSEF A. MAIMAN**

1.     On March 1, 2013, Yosef A. Maiman ("Mr. Maiman" or "Claimant") filed a proof of claim against Ampal-American Israel Corp. (the "Debtor" or "Ampal"), in the above-captioned bankruptcy case with respect to, among other things, his claims for salary and benefits, severance and indemnification (the "Original Proof of Claim"). Mr. Maiman hereby submits this supplemental proof of claim ("Supplemental Proof of Claim") against the Debtor to supplement (but not to replace, supplant or supersede) the Original Proof of Claim.

**DESCRIPTION OF SUPPLEMENTAL CLAIM**

**A.    The Series B Bonds**

2.     Mr. Maiman holds NIS 1,846,703 face amount of bonds (the "Series B Bonds"), issued pursuant to that certain Deed of Trust dated April 6, 2008 (as amended and supplemented, the "Series B Deed of Trust"), entered into by and between Ampal and Reznik Paz Nevo R.P.N. Trust 2007 Ltd, as successor trustee ("Reznik"). Mr. Maiman hereby asserts a general unsecured claim against Ampal on account of his Series B Bonds in the amount of the principal amount thereof plus any accruing and unliquidated amounts related thereto.[1]

---

[1]     Upon information and belief, Reznik filed a proof of claim on behalf of all holders of the Series B Bonds. Nevertheless, out of the abundance of caution, Mr. Maiman includes his Series B Bonds in this Supplemental Proof of Claim.

APP-168

**B.**   **The Columbia Ethanol Project**

3.     The Debtor commenced the chapter 11 case by filing a petition for voluntary protection under chapter 11 of the Bankruptcy Code on August 29, 2012 (the "Petition Date").

4.     Prior to the Petition Date (1) that certain Amended and Restated Promissory Note, dated as of December 25, 2008, was issued by Merhav (M.N.F.) Limited ("Merhav") in favor of Merhav-Ampal Group, Ltd. ("MAG"), as assignee of Ampal (as amended, the "Note"), (2) that certain Option Exercise Agreement, dated as of December 31, 2009, was entered into by and between Merhav and MAG, as assignee of Ampal (as amended, the "Agreement"), (3) that certain Guaranty, dated as of December 25, 2008, was issued by Mr. Maiman for the benefit of MAG, as assignee of Ampal (the "Guaranty") and (4) that certain Assignment and Assumption Agreement, dated as of December 31, 2010, was entered into whereby Ampal assigned all of its rights and interests under the Note, the Agreement and the Guaranty to MAG.

5.     Ampal, MAG and certain representatives of Ampal's debenture trusts and bondholders impeded Merhav from obtaining financing for its Columbian ethanol-producing project and actively and deliberately hindered the occurrence of the "Qualified Financing Date" (as defined in the Agreement).  Conduct by Ampal's debenture trusts and bondholders is imputed to Ampal through their extensive control over Ampal, MAG and Mr. Spizz, Ampal's Chapter 7 trustee.

6.     As such, Ampal is obligated to compensate Mr. Maiman for any harm, costs and damages that Mr. Maiman has and/or may incur in connection with the Note, the Agreement and the Guaranty.

2

## APP-169

### RESERVATION OF RIGHTS

7.    Mr. Maiman hereby reserves all of the rights and remedies at law, in equity, or otherwise, that he has or may have against the Debtor, its affiliates and subsidiaries and all other persons and entities under the Bankruptcy Code and other applicable law.

8.    Mr. Maiman reserves the right to amend and supplement this Supplemental Proof of Claim at any time, and from time to time, and in any respect, including, without limitation, for the purpose of fixing, liquidating, increasing or amending the amounts asserted herein or for any other lawful purpose.

9.    Mr. Maiman reserves the right to supplement this Supplemental Proof of Claim with additional relevant documents and/or claims, and expressly reserves the right to file a request for payment of administrative priority expenses in accordance with 11 U.S.C. §§ 503 and 507.

10.    This Supplemental Proof of Claim is not a waiver of any right, power or remedy that may be available to Mr. Maiman under the Agreements or in any other related or applicable document; all such rights are hereby expressly reserved.

11.    This Supplemental Proof of Claim and the claims set forth herein are not subject to any setoff or counterclaim.

12.    Notices with respect to this Supplemental Proof of Claim should be served on the following:

Kasowitz, Benson, Torres & Friedman LLP
Attn:    David M. Friedman (DFriedman@kasowitz.com)
         Daniel A. Fliman (DFliman@kasowitz.com)
1633 Broadway
New York, NY 10019
(212) 506-1700 (telephone)
(212) 506-1800 (facsimile)

APP-170

**EXHIBIT "D"**

# APP-171

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>AMPAL-AMERICAN ISRAEL CORP.,<br><br>           Debtor. | Chapter 7<br><br>Case No. 12-13689 (SMB) |
| MERHAV AMPAL GROUP, LTD. f/k/a/<br>MERHAV-AMPAL ENERGY, LTD.,<br><br>           Plaintiff<br><br>    - against -<br><br>MERHAV (M.N.F.) LIMITED AND YOSEF<br>A. MAIMAN,<br>           Defendants. | Adv. Proc. No. 14-02385 (SMB) |

## ANSWER

Defendants Merhav (M.N.F.) Limited ("Merhav") and Yosef A. Maiman ("Maiman" and

together with Merhav, "Defendants"), by their attorneys, Kasowitz, Benson, Torres & Friedman

LLP, as and for their answer to the complaint ("Complaint") of Merhav Ampal Group, Ltd. f/k/a

Merhav-Ampal Energy, Ltd. ("MAG"), hereby state as follows[1]:

    1.      Defendants admit the allegations contained in Paragraph 1 of the Complaint.

    2.      Defendants admit the allegations contained in Paragraph 2 of the Complaint.

    3.      Defendants admit the allegations contained in Paragraph 3 of the Complaint.

    4.      Paragraph 4 of the Complaint contains no allegations which require a response.

---

[1]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Complaint.

## APP-172

5.      Paragraph 5 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Defendants admit only that venue in this Court is proper.

6.      Defendants deny knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations contained in Paragraph 6 of the Complaint, except admit that Ampal is currently the Debtor in the Chapter 7 bankruptcy proceeding currently pending in this Court.

7.      Defendants admit the allegations contained in Paragraph 7 of the Complaint.

8.      Defendants deny the allegations contained in Paragraph 8 of the Complaint, except admit that Mr. Maiman resides in Israel.  Further, Defendants admit that at certain times until May 2013, Mr. Maiman was Chairman of Ampal's board of directors and Chief Executive Officer of Ampal.

9.      Defendants deny the allegations contained in Paragraph 9 of the Complaint, and refer to the agreements referenced therein for the terms thereof.

10.      Defendants deny the allegations contained in Paragraph 10 of the Complaint, and refer to the agreements referenced therein for the terms thereof.

11.      Defendants deny the allegations contained in Paragraph 11 of the Complaint, and refer to the agreements referenced therein for the terms thereof.

12.      Defendants admit that Merhav has not made a payment to Ampal related to the purported loan.  Defendants deny the remaining allegations contained in Paragraph 12 of the Complaint, and refer to the agreements referenced therein for the terms thereof.

13.      Defendants deny the allegations contained in Paragraph 13 of the Complaint, and refer to the agreements referenced therein for the terms thereof.

## APP-173

14.    Defendants deny the allegations contained in Paragraph 14 of the Complaint, and refer to the agreements referenced therein for the terms thereof.

15.    Defendants deny the allegations contained in Paragraph 15 of the Complaint, and refer to the agreements referenced therein for the terms thereof.

16.    Defendants deny the allegations contained in Paragraph 16 of the Complaint, and refer to the agreements referenced therein for the terms thereof.

17.    Defendants deny the allegations contained in Paragraph 17 of the Complaint, and refer to the agreements referenced therein for the terms thereof.

18.    Defendants deny the allegations contained in Paragraph 18 of the Complaint, and refer to the agreements referenced therein for the terms thereof.

19.    Defendants deny the allegations contained in Paragraph 19 of the Complaint, and refer to the agreements referenced therein for the terms thereof.

20.    Defendants deny the allegations contained in Paragraph 20 of the Complaint except admit that by early December 2011, the contemplated transaction concerning the Columbia ethanol project had not been consummated and Merhav had not made a payment to Ampal or MAG related to the purported loan.  Additionally, Defendants refer to the agreements referenced in Paragraph 20 for the terms thereof.

21.    Defendants admit the allegations contained in Paragraph 21 of the Complaint.

22.    Defendants deny the allegations contained in Paragraph 22 of the Complaint except admit that by December 31, 2012, the contemplated transaction concerning the Columbia ethanol project had not been consummated.

23.    Defendants deny the allegations contained in Paragraph 23 of the Complaint, and refer to the agreements referenced therein for the terms thereof.

# APP-174

24.    Defendants deny the allegations contained in Paragraph 24 of the Complaint except admit that Merhav has not made a payment to Ampal or MAG related to the purported loan.

25.    Defendants deny the allegations contained in Paragraph 25 of the Complaint.

26.    Defendants deny the allegations contained in Paragraph 26 of the Complaint except admit that a demand was delivered in or around July 2014.

27.    Defendants deny the allegations contained in Paragraph 27 of the Complaint except admit that a demand was delivered in or around July 2014.

28.    Defendants deny the allegations contained in Paragraph 28 of the Complaint except admit that neither Merhav nor Mr. Maiman has made a payment to Ampal or MAG related to the purported loan.

### Answer to Plaintiff's First Claim for Relief Against Defendants

29.    In responding to Paragraph 29 of the Complaint, Defendants refer to their responses to Paragraphs 1-28 of the Complaint.

30.    Defendants deny the allegations contained in Paragraph 30 of the Complaint, and refer to the agreements referenced therein for the terms thereof.

31.    Defendants deny the allegations contained in Paragraph 31 of the Complaint, and refer to the agreement referenced therein for the terms thereof.

32.    The second sentence of Paragraph 32 of the Complaint requires no response, and Defendants deny the remaining allegations contained in this paragraph, and refer to the agreement referenced therein for the terms thereof.

33.    Defendants deny the allegations contained in Paragraph 33 of the Complaint.

# APP-175

### Answer to Plaintiff's Second Claim for Relief Against Defendants

34.     In responding to Paragraph 34 of the Complaint, Defendants refer to their responses to Paragraphs 1-33 of the Complaint.

35.     Defendants deny the allegations contained in Paragraph 35 of the Complaint.

36.     Defendants deny the allegations contained in Paragraph 36 of the Complaint.

37.     Defendants deny the allegations contained in Paragraph 37 of the Complaint.

### GENERAL DENIAL

Unless specifically admitted herein, the Defendants deny each and every allegation in the Complaint and demand strict proof thereof.

### AFFIRMATIVE DEFENSES

Without assuming the burden of proof where such burden properly rests with Plaintiff, and without waiving and hereby expressly reserving the right to assert any and all such defenses at such time and to such extent as discovery and factual developments may establish a basis therefore, Defendants hereby assert, as and for separate and additional defenses to Plaintiff's Complaint, that:

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief may be granted or for which the damages sought can be awarded.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of unclean hands, waiver, *in pari delicto*, economic loss, and/or estoppel.

**APP-176**

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, due to Plaintiff's breach of the implied covenant of good faith and fair dealing.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, due to its knowledge of the tortious conduct of third parties which prevented Defendants from undertaking certain actions.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because the Debtor's bondholders and their trustees and representatives (the "Bondholder Parties") made consummation of the Columbia ethanol project impossible through their tortious interference. The Bondholder Parties, whose asserted claims comprise nearly all of the Debtor's debts, are essentially the sole beneficiaries of this action and also exert extensive control and influence over the Trustee and the Plaintiff. Indeed, the Bondholder Parties elected the Trustee as Chapter 7 trustee, thereby hand-selecting him. And, the Bondholder Parties are financing this litigation by loaning funds to Plaintiff in exchange for liens on any recoveries. For these reasons, the conduct of the Bondholder Parties should be imputed to the Trustee and to Plaintiff. Otherwise, the very parties that blocked the Columbia ethanol project will receive a windfall.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, to the extent that it has not suffered any actual injury or damages as a result of the facts alleged in the Complaint.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, on the basis that it would be unjustly enriched if allowed to recover all or any portion of the damages alleged in the Complaint.

## APP-177

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, to the extent Plaintiff's injuries or damages, which injuries or damages are denied, were the result of Plaintiff's own conduct and actions.

### NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, to the extent Plaintiff's injuries or damages, which injuries or damages are denied, were not caused in fact or proximately caused by acts and/or omissions of Defendants.

### TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, due to impossibility of Defendants' performance under the agreements.

### ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, to the extent Plaintiff has failed to join indispensable parties.

### TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, to the extent Plaintiff has failed to satisfy all conditions precedent to recovery.

### THIRTEENTH AFFIRMATIVE DEFENSE

To the extent Plaintiff is entitled to any recovery on its claims, which Defendants deny, such recovery is subject to set-off in favor of Defendants.

### FOURTEENTH AFFIRMATIVE DEFENSE

To the extent Plaintiff is entitled to any recovery on its claims, which Defendants deny, Plaintiff has failed to take action or has taken insufficient action to mitigate those damages.  Any

## APP-178

damages suffered by Plaintiff must be reduced in an amount by which Plaintiff could have mitigated those damages.

### FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, to the extent that Plaintiff's acts or omissions increased Defendants' risks or otherwise injured Mr. Maiman's rights and remedies as a guarantor.

### SIXTEENTH AFFIRMATIVE DEFENSE

Defendants reserve the right to amend this Answer to assert any such other affirmative defenses as may become apparent through discovery or otherwise.

WHEREFORE, Defendants respectfully demand judgment in their favor and against Plaintiff as follows:

a.     dismissing the Complaint with prejudice;

b.     awarding Defendants their costs, expenses, disbursements, and attorneys' fees incurred as a result of the Complaint; and

c.     granting such other and further relief to Defendants as the Court may deem just and appropriate.

## APP-179

Dated: November 24, 2014
      New York, New York

                        KASOWITZ, BENSON, TORRES
                          & FRIEDMAN LLP

                      By: /s/ Daniel A. Fliman
                          David M. Friedman (dfriedman@kasowitz.com)
                          Daniel A. Fliman (dfliman@kasowitz.com)
                          Nii-Amar Amamoo (namamoo@kasowitz.com)
                          Andrew R. Kurland (akurland@kasowitz.com)
                          1633 Broadway
                          New York, New York 10019
                          Telephone: (212) 506-1700
                          Facsimile: (212) 506-1800

                        *Attorneys for Merhav (M.N.F.) Limited*
                        *and Yosef A. Maiman*

APP-180

**EXHIBIT "E"**