USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: July 18, 2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

In re:                                               :

AMPAL-AMERICAN ISRAEL CORP.,                         :          15 Civ. 6569 (KPF)
                                                     :
             Debtor.                                 :
                                                     :
---------------------------------------------------- :          Bankr. No. 12-13689 (SMB)
                                                     :
YOSEF A. MAIMAN and MERHAV                           :          OPINION AND ORDER
(M.N.F.) LIMITED,                                    :
                                                     :
             Appellants,                             :
                                                     :
       v.                                            :
                                                     :
ALEX SPIZZ,                                          :
                                                     :
             Appellee.                               :
                                                     :
------------------------------------------------------X

KATHERINE POLK FAILLA, District Judge

Appellants Yosef A. Maiman and Merhav (M.N.F.) Limited appeal from an order issued by the United States Bankruptcy Court for the Southern District of New York (Bernstein, *J.*), authorizing Appellee Alex Spizz, the Chapter 7 Trustee of Ampal-American Israel Corporation, to retain the law firm of Tarter Krinsky & Drogin LLP as his general counsel, and denying Appellants' cross-motion to disqualify the Trustee. Appellants argued below, and reiterate here, that the law firm is conflicted from representing the Trustee under 11 U.S.C. § 327, and that the Trustee should have been removed for cause for various reasons. As set forth in the remainder of this Opinion, this Court affirms the Bankruptcy Court's order.

## BACKGROUND[1]

On August 29, 2012, Ampal-American Israel Corporation ("Ampal" or the "Debtor"), a corporation engaged in "acquiring interests in various businesses" located in or related to Israel, filed a Chapter 11 petition in the United States Bankruptcy Court for the Southern District of New York.  (Bankr. Dkt. #1, Ex. A).  On April 5, 2013, the Bankruptcy Court issued an Order directing appointment of a Chapter 11 Trustee, *see In re Ampal-American Israel Corp.*, No. 12-13689 (SMB), 2013 WL 1400346 (Bankr. S.D.N.Y. Apr. 5, 2013) ("*Ampal I*"); and on May 2, 2013, the Court converted the matter to a Chapter 7 bankruptcy (Bankr. Dkt. #258).  The voting creditors then elected Alex Spizz as Chapter 7 Trustee.  (Bankr. Dkt. #275).  Spizz's law firm, Nachamie Spizz Cohen & Serchuk, P.C. ("Spizz Cohen"), was retained as counsel to the Trustee on June 27, 2013.  (Bankr. Dkt. #298).  Thereafter, Spizz's law firm dissolved, and he joined the firm of Tarter Krinsky & Drogin LLP ("TKD"); as a result, on April 17, 2015, Spizz sought to employ TKD as counsel to the Chapter 7 Trustee.  (Bankr. Dkt. #573).

TKD is not new to this case.  Previously, TKD had represented three entities — Ofer Shapira and his law firm, Shapira & Co. (together, "Shapira"),

---

[1]     The facts set forth herein are taken from the Bankruptcy Court record designated on appeal by Appellants (Dkt. #10), and the docket of the bankruptcy case, No. 12-13689 (SMB) (Bankr. S.D.N.Y.) ("Bankr. Dkt.").  Citations to "R. [number]" refer to the page number within the record.  Included within the record is the Bankruptcy Court's July 27, 2015 opinion detailing its findings of fact and conclusions of law on the parties' motions; it is cited in this Opinion as "Bankr. Op."  For convenience, the parties' memoranda of law will be referred to as follows:  Appellants' opening brief as "Appellant Br." (Dkt. #10); Appellee's opposition as "Appellee Opp." (Dkt. #12); and Appellants' reply brief as "Appellant Reply" (Dkt. #14).

and Mishmeret Trusts Company Ltd ("Mishmeret"), an Indenture Trustee of the estate that Shapira represents — in earlier proceedings in this bankruptcy. Citing this prior representation, Appellants have vigorously opposed the Trustee's application to retain TKD as general counsel.  Indeed, Appellants have contended that the only proper course of action is to remove the Trustee entirely from this case.  To place the instant appeal in context in this lengthy and contentious bankruptcy, the Court will detail several earlier skirmishes between the parties that inform the current dispute.

**A.   The Prior Proceedings**

### 1.   The Trustee's Application in June 2013 to Retain Shapira as Special Counsel

On June 24, 2013, the Trustee moved for appointment of Shapira as special counsel to the Trustee to represent the estate's interests in Israel. (Bankr. Dkt. #291).  Appellant Yosef Maiman, on behalf of Ampal's controlling shareholders (the "Controlling Shareholders"), objected to this application on the ground that Shapira concurrently represented Mishmeret and another Indenture Trustee, Hermetic Trust, and that this representation gave Shapira an interest adverse to the estate.  (Bankr. Dkt. #303).  The Bankruptcy Court held a hearing on July 11, 2013, during which the Trustee withdrew the application and exercised Ampal's right to retain Shapira solely as counsel to certain non-debtor subsidiaries.  (Bankr. Dkt. #318; R. 22-35).

### 2.    The Violation of the Automatic Stay by Shapira and Mishmeret in October 2013

On October 4, 2013, Shapira, representing Mishmeret and Hermetic, wrote a letter to Maiman and certain other Ampal officers and directors, alleging breaches of fiduciary duties, waste, and mismanagement, and seeking payment or security for payment to his clients.  (Bankr. Dkt. #352, Ex. B-2; R. 74-75).  Counsel for certain recipients of the Shapira letter contacted the Trustee, requesting that he (i) notify Shapira that the letter violated the automatic stay and demand that Shapira withdraw it, and (ii) terminate Shapira's retention by the non-debtor Ampal subsidiaries.  (Dkt. #352, Ex. C; R. 75).  The Trustee responded that he understood Shapira to have written the letter "to preserve claims under the Debtor's D&O policies," and reasoned that because Shapira had not taken any action beyond writing the letter, he had not violated the automatic stay.  (*Id.*).  In the same response, the Trustee confirmed that he "[had] no intention to allow the bondholders or others prosecute claims that belong[ed] to the debtor's estate."  (*Id.*).

The letter recipients then moved to enforce the automatic stay in the Bankruptcy Court (the "Enforcement Motion"); they concurrently sought damages from Mishmeret and Shapira, and an order from the Bankruptcy Court directing the Trustee to terminate Shapira's representation of the non-debtor Ampal subsidiaries.  (Bankr. Dkt. #352; R. 75-76).  The Trustee, as well as Mishmeret and Shapira, filed responses in opposition, contending that these directors and officers lacked standing to seek to enforce the automatic stay or to recover damages; the Trustee further maintained that the Shapira letter did

not violate the automatic stay.  (Bankr. Dkt. #357, 362; R. 76-77).  In addition, the Trustee, Mishmeret, and Shapira argued that the Court should not compel the Trustee to terminate Shapira, as Shapira was retained only by the non-debtor subsidiaries, and disqualification was therefore unwarranted.  (Bankr. Dkt. #357, 364; R. 76-77).  TKD was retained to represent Mishmeret and Shapira in this proceeding.  (Bankr. Dkt. #357).

At oral argument, TKD reiterated on its clients' behalf that they did not intend to assert claims belonging to the estate and that they agreed not to pursue any such claims.  (R. 54-55).  The Bankruptcy Court accordingly deemed that representation "a withdrawal of the October 4 Letter to the extent it demanded payment or security for [] claims that belong to the estate."  *In re Ampal-American Israel Corp.*, No. 12-13689 (SMB), 502 B.R. 361, 368 (Bankr. S.D.N.Y. 2013) ("*Ampal II*").

Ultimately, the Bankruptcy Court found that Mishmeret and Shapira had willfully violated the automatic stay by "demanding payment on account of an estate claim," but that the letter recipients had failed to "identify any damages proximately caused by the stay violation," other than attorneys' fees and legal expenses that the Court deemed "unnecessary litigation costs" resulting from an "overreaction" of a motion.  *Ampal II*, 502 B.R. at 374.  Further, the Bankruptcy Court declined to direct the Trustee to terminate Shapira as counsel to the non-debtor subsidiaries, explaining that "Shapira ha[d] not taken any steps to collect the D&O insurance proceeds on Mishmeret's behalf, and any conflict [was thus] potential and hypothetical."  *Id.* at 375.

### 3.     The October 2013 Discovery Dispute

On October 7, 2013, the Trustee moved to compel Ampal, through

Maiman, to produce certain electronic information related to Ampal; the parties

stipulated to procedures for segregating confidential information of former

employees, but then sought the Bankruptcy Court's assistance in

implementing the terms of that stipulation.  (R. 91-95).  Ultimately, the

Bankruptcy Court issued a supplemental order (the "Discovery Order"), which,

as relevant here, prohibited the Trustee from disclosing certain confidential

information to Ofer Shapira individually, as well as Shapira & Co., its

employees, representatives, or agents.  (Bankr. Op. 7-8).

### 4.     The May 2014 Litigation Financing Agreement

In May 2014, the Trustee and the Indenture Trustees entered into a

Litigation Financing Agreement (the "LFA"), in connection with which TKD

represented Mishmeret.  (R. 366-401).  Pursuant to the LFA, the Indenture

Trustees would loan $1.5 million to fund litigation against the Controlling

Shareholders, including Maiman, and its former officers and directors.  (*Id.* at

386-90).  As the Bankruptcy Court explained:

> The principal focus of [this] litigation was a $20 million
> note, executed in favor of Ampal by Merhav (M.N.F.)
> Limited ("MNF"), an entity controlled by Maiman and
> one of the Controlling Shareholders, and personally
> guaranteed by Maiman.  Ampal subsequently assigned
> the note to Merhav Ampal Group ("MAG"), a non-debtor
> subsidiary.  The Trustee and MAG were required to use
> reasonable efforts to commence the Maiman Litigation
> as soon as practicable.

(Bankr. Op. 6-7).

6

The Bankruptcy Court approved the LFA on June 24, 2014 (Bankr. Dkt. #429), and as permitted by its terms, Mishmeret promptly assigned its rights and obligations under the LFA to Klirmark Opportunity Fund L.P. and Meitav Gemel & Pension Ltd., two underwriters not represented by TKD (Bankr. Dkt. #429, 587).

### 5.   The MAG Litigation and the Assertion of the Interference and Gadot Claims

Following execution of the LFA, MAG sued Appellants in New York State Supreme Court in September 2014; prior to answering, Maiman filed a proof of claim against the estate, asserting that Ampal, MAG, and representatives of the Indenture Trustees had interfered with MNF's attempts to finance an ethanol production project in Colombia.  (*See* Adv. Proc. 14-02385, Dkt. #1-A; R. 166-70).[2]  Appellants then removed this action to the Bankruptcy Court in October 2014, following which MAG filed a complaint and Appellants filed an answer. (Adv. Proc. 14-02385, Dkt. #4, 7).[3]

In their answer, Appellants asserted an affirmative defense of tortious interference (the "Interference Claim") with the project in Colombia, and then reasserted this claim in a third-party complaint filed against the Indenture Trustees, Shapira, and two Ampal bondholders.  (Adv. Proc. 14-02385, Dkt. #8; R. 181-95).  According to Appellants, as of 2011 and 2012, "[MNF] and Ampal

---

[2]   The Bankruptcy Court would later term this claim "frivolous," at least as it pertained to Ampal, inasmuch as Maiman effectively controlled Ampal during the relevant period. *Ampal II*, 2015 WL 5176395, at *11-12.

[3]   Technically speaking, Maiman and MNF are defendants and third-party plaintiffs in the adversary proceeding discussed in the text.  For ease of reference, this Court will refer to them as Appellants when discussing that litigation in this Opinion.

had made great progress securing the required land, permitting, and the additional financing necessary" for the Colombian ethanol project. (R. 186-87). Simultaneously, however, Ampal "was faced with great difficulties" in its Middle Eastern investments, in part due to the Arab Spring, and it failed to receive "crucial dividend payments from its portfolio companies." (*Id.* at 187-88). As Ampal began to negotiate restructuring proposals with its Bondholders and their representatives, Appellants claimed, those Bondholders and representatives made "inflammatory and untrue comments" to the media as part of a "very public smear campaign" and attempted to dissuade potential investors, who consequently pulled out of the project. (*Id.* at 188-89, 190). The Colombian project fell through, and Ampal filed for bankruptcy. (*Id.* at 190).

Further, in the third-party complaint, Appellants alleged that the Indenture Trustees had harmed the estate by "improperly inform[ing] the press that the Bondholders intended to force a sale of Gadot (one of Ampal's portfolio companies)"; on the following day, "Israel Discount Bank nominated a receiver for Gadot's shares," resulting in tens of millions of dollars lost in Ampal's investment in Gadot (the "Gadot Claim"). (R. 191).

On September 2, 2015, the Bankruptcy Court granted summary judgment in favor of MAG and against Appellants, resulting in an entry of a money judgment for an amount in excess of $28 million. *See Ampal II*, 2015 WL 5176395, at *14. This decision was subsequently affirmed by the United States District Court for the Southern District of New York (Rakoff, *J.*) on

February 29, 2016.  *See In re Ampal-American Israel Corp.*, No. 15 Civ. 7949 (JSR), 2016 WL 859352 (S.D.N.Y. Feb. 28, 2016).

Also in February, the Bankruptcy Court dismissed Appellants' third-party complaint.[4]  With regard to their disallowance claim against the Indenture Trustees, the Bankruptcy Court determined that Appellants' "unclean hands" allegations were insufficiently related to the Indenture Trustees' proofs of claims to disallow those proofs of claim.  *See In re Ampal-American Israel Corp.*, 545 B.R. 802, 811 (Bankr. S.D.N.Y. 2016).  Further, the Bankruptcy Court deemed Appellants' setoff claim unsustainable because the alleged debts lacked mutuality, as required under law.  *Id.* at 814.  Because the disallowance and setoff claims were the jurisdictional hooks for the third-party complaint, the Bankruptcy Court declined to exercise supplemental jurisdiction over Appellants' tortious interference claims against the Indenture Trustees. *Id.* at 814-15.  Accordingly, the Bankruptcy Court did not evaluate the merits of the Interference and Gadot claims as they pertained to Shapira and Mishmeret.[5]

---

[4]    Although this decision and that of Judge Rakoff postdate this appeal and the designation of the record on appeal, the Court takes judicial notice of their occurrence here.

[5]    In granting MAG's motion for summary judgment, the Bankruptcy Court looked askance at those claims as they pertained to Ampal itself.  After concluding that Maiman was either barred from or had abandoned his defenses to MAG's claims, the Court observed:

> In any event, MNF can assert defenses to the 2008 Note, and even if Maiman could too, the defenses they asserted plainly lack merit. Their principal defense is to blame Ampal for their breach.  They contend that the Third Party Defendants defamed MNF and Maiman and tortiously interfered with MNF's efforts to consummate the Project, Ampal failed to stop the Third Party Defendants (they don't say how this could have been accomplished)

**B.      The Retention Application and Subsequent Proceedings**

**1.      The Written Submissions**

As noted, the Trustee's former law firm dissolved, and he joined TKD in early 2015.  On April 17, 2015, the Trustee filed an application to retain TKD as his general counsel (the "Retention Application"), which application is the genesis of the instant appeal.  (R. 102).

In the accompanying Declaration, the Trustee indicated that he and Arthur Goldstein, who were "responsible for overseeing the Chapter 7 case" while at Spizz Cohen, had joined TKD and intended to retain TKD as Trustee's counsel, in the best interests of the estate, "for the sake of efficiency, continuity and economy."  (R. 103).  The Trustee's Declaration enumerated the services to be provided by TKD and disclosed TKD's former representation of (i) Shapira, with regard to the Enforcement Motion, and (ii) Mishmeret, with regard to an earlier dispute over a sinking fund, "which dispute was resolved by an agreement approved by the Court."  (*Id.* at 107).  The Trustee thus averred that "TKD no longer represent[ed] either of the aforementioned entities."  (*Id.*).

---

and Ampal's failure to stop the Third Party Defendants' tortious conduct breached the Further Assurances Provisions in the Option Agreement and the Option Exercise Agreement and excused payment.  (Opposition at 9-10.)

The argument is frivolous.  Maiman ran Ampal at the time and also controlled MNF.  In essence, the Defendants are contending that they should be excused from honoring the 2008 Note and Guaranty because they didn't do anything to stop the Third Party Defendants.  Suffice it to say, a party may not cause a breach of contract and claim that the breach excused its own obligation to perform.

*Ampal II*, 2015 WL 5176395, at *11-12 (citation omitted).

Separately, Arthur Goldstein filed a Declaration, similarly articulating the services to be provided by TKD to the Trustee, and stating that, to his knowledge, no member of the TKD firm "presently represent[ed]" a creditor of Ampal. (R. 111). Goldstein also affirmed that "[t]o the best of [his] knowledge and based upon the information presently available to [him], TKD [was] a 'disinterested' person" under the relevant provisions of the Code. (*Id.* at 111-12). Goldstein's Declaration disclosed TKD's former representation of Shapira and Mishmeret, and stated that "TKD no longer represents either of the aforementioned entities and will not represent such parties for the duration of this Chapter 7 case." (*Id.* at 112).

Unsurprisingly, given the history outlined in the previous section, Appellants objected to the Retention Application on the ground of TKD's prior involvement in the bankruptcy proceedings, arguing that TKD had represented Mishmeret and Shapira in this case, parties which had "a long history of engaging in conduct calculated to harm, at all costs, the Debtor's estate and Mr. Maiman, the Debtor's shareholder." (R. 119). Appellants pointed specifically to:

- The Trustee's prior application to retain Shapira as special counsel, and Shapira's subsequent retention as counsel for non-debtor subsidiaries, which "mired [Shapira] in an irreconcilable conflict of interest, representing non-debtor subsidiaries which are controlled by the Trustee, *and* one of the Debtor's largest creditors" (*id.* at 122 (emphasis in original));

- The Discovery Order's prohibition on allowing Shapira access to certain files possessed by the Trustee, which Appellants interpreted to provide that "[b]y joining TKD, the Trustee [fell] within the ambit of the Discovery Order

11

and [could] no longer access the Private Information"
(*id.* at 123);

▪   Mishmeret's and Shapira's opposition, filed by TKD, to
the Enforcement Motion (*id.* at 124-25);

▪   TKD's representation of Mishmeret in connection with
the LFA (*id.* at 126); and

▪   The estate's "valuable causes of action against
Mishmeret and Shapira," including the Interference
Claim, by virtue of which "TKD, and by imputation the
Trustee, are irreconcilably conflicted" (*id.* at 126-27).

Appellants contended that, under 11 U.S.C. § 327(a), TKD held or
represented interests adverse to the estate and was not disinterested, thereby
barring its retention as counsel to the Trustee.  (R. 127-28).  Further,
Appellants asserted that TKD had an "actual conflict" that mandated
disqualification by the Bankruptcy Court without resort to any equitable
considerations.  (*Id.* at 128-29).  The fact "[t]hat TKD allegedly no longer
represents Mishmeret and Shapira [did] not change the result," Appellants
claimed, because TKD maintained ongoing duties and loyalties to its former
clients and could not act adversely to them.  (*Id.* at 131-32).

Going one step further, Appellants argued that the Bankruptcy Court
should remove the Trustee for cause, pursuant to § 324 of the Code, which
permits removal where a trustee is "not disinterested" or fails to perform his
duties.  (R. 133).  They claimed that the mere fact of joining TKD — a firm that
represented interests adverse to the estate — required the Trustee's removal.
(*Id.* at 133-34).  Cited as further evidence of cause was the fact that the Trustee
had wrongfully declined to bring claims (namely, the Gadot and Interference

12

Claims) against Mishmeret and Shapira, and was himself in violation of the Bankruptcy Court's Discovery Order. (*Id.* at 134-35).

In reply to Appellants' opposition, Goldstein reiterated that TKD no longer represented Mishmeret or Shapira, and that TKD's involvement in the LFA had been limited. (R. 140-41). Further, the Trustee affirmed his awareness of TKD's prior representation of Mishmeret and Shapira, but stated that he had advised by the partner-in-charge of TKD that such representation had been limited and was resolved. (*Id.* at 143). Moreover, the Trustee stated that, at the time the third-party complaint was filed by Maiman and MNF, Mishmeret and Shapira were represented by a different law firm. (*Id.* at 143-44). Still further, the Trustee related that "as long as there was no current representation of Mishmeret or Shapira by TKD," the U.S. Trustee would not object to the Trustee joining that firm or retaining it as counsel. (*Id.* at 144).

Proceeding to Appellants' other arguments, the Trustee indicated that (i) the Discovery Order had not been and would not be violated, as the confidential files were maintained by Goldstein on a separate hard drive maintained under lock and key, and as TKD had established an "ethical wall" preventing access by anyone involved except Goldstein, the Trustee, and fellow former Spizz Cohen attorney Jill Makower; (ii) Mishmeret was *not* a post-petition lender to the Trustee under the LFA by dint of assigning away its rights; and (iii) the Trustee had evaluated Appellants' allegations and determined there were no "valuable causes of action" against Mishmeret or

Shapira concerning the Colombian ethanol project or the Gadot Claim.
(R. 145-47).

To amplify upon this last point, the Trustee detailed a series of facts that suggested that Appellants' proffered claims against Mishmeret and Shapira were more apparent than real: These claims did not appear on Ampal's initial bankruptcy filings or schedules, and the Trustee only learned of them when Maiman filed a proof of claim several years later, in apparent response to MAG's September 2014 state-court complaint; even then, Maiman asserted claims on behalf of himself and MNF against Ampal and the Trustee, rather than on the estate's behalf against Mishmeret and Shapira.  (R. 147-48).  After removal, when MAG brought its complaint against Appellants on the $20 million note, Appellants raised the affirmative defense of tortious interference; they then asserted this argument offensively in their third-party complaint.  (*Id.* at 148-49).  Most importantly, the Trustee opined, prosecution of the alleged Interference Claim, which he deemed "uncertain and speculative," could undermine the Trustee's more definite (and, as it happened, more lucrative) claims against Appellants.  (*Id.* at 149-50).

All of that said, the Trustee averred that he "ha[d] no reservations about pursuing claims against any parties that may potentially benefit the Ampal Estate," citing as example an earlier-contemplated complaint against the Indenture Trustees, including Mishmeret, that was ultimately settled by stipulation.  (R. 150).  Moreover, the Trustee asserted, Appellants had failed throughout to specify the untrue or defamatory statements at issue in the

Interference Claim, when or to whom they were made, how the purported investors learned of them or were influenced by them, or how Appellants quantified the loss suffered.  (*Id.* at 151).  As the Trustee maintained, "[t]he liability on the claims seem[ed] dubious at best, and the damages [were] highly speculative"; accordingly, it would violate the Trustee's own fiduciary duties to pursue those claims at the potential expense of his $25 million claim against Appellants.  (*Id.*).  Nonetheless, he stated, he "continue[d] to keep an open mind" and "would not hesitate to appoint special conflict counsel to investigate and if appropriate pursue those claims" had the Bankruptcy Court deemed it appropriate.  (*Id.*).[6]

Finally, the Trustee reaffirmed that if he determined there were valuable claims against Mishmeret or Shapira, he would immediately retain conflicts counsel.  (R. 153).  And, as he explained, TKD had — in an abundance of caution — instituted an ethical wall preventing any employee involved in previous work for Mishmeret or Shapira from accessing Ampal files or working for the Trustee.  (*Id.*).

### 2.    The Bankruptcy Court Hearings

On May 21, 2015, the Bankruptcy Court held a hearing on the Retention Application, at which the parties expounded on their extensive briefing. (R. 405-34).  The Bankruptcy Court then requested additional testimony on the

---

[6]     Separately, with regard to Appellants' assertion that the Trustee had failed to pursue the Gadot Claim, the Trustee stated that he had not received notice of the claim in the Debtor's filing, but had nonetheless "look[ed] into" it and "determined that [the] allegation [was] not borne out by the facts."  (R. 155).

nature of TKD's prior representation of Mishmeret and Shapira and its institution of an ethical wall.  (*Id.* at 431).  In addition, the Bankruptcy Court requested comment from the U.S. Trustee regarding the potential conflict issue. (*Id.* at 432-33).[7]

On June 9, 2015, the Bankruptcy Court held an evidentiary hearing, at which Scott Markowitz — who had worked at TKD prior to the Spizz Cohen attorneys joining — testified about the duration, substance, and conclusion of the firm's representation of Mishmeret and Shapira (*see* R. 446-56, 459-60, 468-69); Spizz's and Goldstein's joining the firm in April 2015 (*id.* at 460-61); and the ethical wall erected by TKD (*id.* at 462-64).  Arthur Goldstein also testified regarding TKD's ethical wall between the former Spizz Cohen attorneys and those who worked for Mishmeret and Shapira, as well as his quarantine of the materials protected by the Discovery Order.  (*Id.* at 474-78).[8]

### 3.    The Bankruptcy Court's Decision

In its findings of fact and conclusions of law, the Bankruptcy Court relayed the tortuous history of the case: its commencement and conversion from Chapter 11 to Chapter 7 (Bankr. Op. 3-4); the Trustee's early motion to retain Shapira, the Controlling Shareholders' fervent objections, and the

---

[7]    On June 8, 2015, the U.S. Trustee submitted a response indicating that he would object to appointment of a "co-trustee" or "estate representative" to deal with Mishmeret's claims, and if the Bankruptcy Court found the Trustee precluded from investigating the estate's claims against Mishmeret or Shapira (or vice versa), "the proper remedy would be to remove the Chapter 7 Trustee."  (R. 435-38).

[8]    At the conclusion of the hearing, the Bankruptcy Court directed the Trustee to serve notice of the retention application and objection on Mishmeret, giving Mishmeret an opportunity to respond.  Mishmeret did not respond, and the Trustee filed a certificate of no objection.  (Bankr. Op. 17).

ultimate retention of Shapira only to represent non-debtor subsidiaries (*id.* at 4-5); the Shapira letter, and the Bankruptcy Court's finding that the automatic stay was violated but that neither damages nor termination of Shapira was warranted (*id.* at 5-6); the Trustee's LFA with the Indenture Trustees, for which TKD represented Mishmeret, but pursuant to which Mishmeret did not ultimately serve as a lender (*id.* at 6-7); the Discovery Order prohibiting access by Shapira to certain private information disclosed to the Trustee (*id.* at 7-8); and MAG's litigation against Appellants, which was countered by Maiman's proof of claim, the affirmative defense, and the third-party complaint (*id.* at 8-10).

### a.    The Trustee's Retention Motion

After outlining the parties' positions and the evidence obtained during the hearings (*see* Bankr. Op. 10-17), the Bankruptcy Court set out to evaluate the merits of the competing motions.  Beginning first with the Trustee's motion to retain TKD, the Court considered 11 U.S.C. § 327(a), which permits a trustee to employ professionals, including counsel, who "do not hold or represent an interest adverse to the estate, and are disinterested persons."  (Bankr. Op. 17-18).  It concluded, as a preliminary matter, that "[t]he adverse interest test under Bankruptcy Code § 327(a) speaks in the present tense and only examines present interests," and, further, that TKD did not "presently possess[] claims or interests contrary to the estate, and consequently, d[id] not hold an adverse interest within the meaning of § 327(a)."  (*Id.* at 18-19).  As factual support, the Court found that TKD's representation of Mishmeret and Shapira

17

had ended by July 2014; that there was "no basis to conclude that [TKD] ha[d] a predisposition in favor of Shapira, Mishmeret, or anyone else that renders it biased against the estate"; and, thus, that the firm did not have or represent a materially adverse interest.  (*Id.* at 19).

In a similar vein, the Bankruptcy Court determined that TKD's prior representation of Mishmeret and Shapira did not create an "actual conflict" within the meaning of § 327(c) of the Bankruptcy Code because that representation had been limited.  (Bankr. Op. 19-20 ("The more limited the prior representation, even in the same bankruptcy case, the less likely the actual conflict.")).  Analogizing this case to the bankruptcy proceedings in *In re Diva Jewelry Design, Inc.*, 367 B.R. 463 (Bankr. S.D.N.Y. 2007), the Court observed that

> the issue of actual conflict focuses on the relationship between the prior representation of the creditors and the proposed representation of the estate and, as part of that inquiry, whether confidential communications passed between proposed counsel and his former clients that would prevent him from representing the best interest of the estate.

(*Id.* at 21).  However, the Court recognized, the "mere prior representation of creditors, even in the same bankruptcy case, does not automatically create an actual conflict or mandate disqualification under Bankruptcy Code § 327(c)." (*Id.*).  The Court found TKD's prior representation of Mishmeret and Shapira "was limited," and there was no evidence TKD advised Mishmeret on its claim or received confidential communications about the claim.  (Bankr. Op. 22).

18

The Court further stated that TKD's work on the LFA failed to give rise to an actual conflict, as Mishmeret was not a lender under the LFA. (*Id.*).

With regard to the Enforcement Motion, the Bankruptcy Court acknowledged its previously-expressed concern about a potential conflict between Mishmeret/Shapira and the estate regarding the D&O insurance proceeds, but found that no actual conflict had emerged since its earlier decision. (Bankr. Op. 22). Additionally, because that motion had been resolved, the Court "[did] not foresee any further proceedings" that could result in an actual conflict. (*Id.*).

Next, the Bankruptcy Court assessed Appellants' arguments concerning the Discovery Order and the larger concern with disclosure of confidential information. (Bankr. Op. 23). The Court concluded that the Order's prohibition on disclosure to Shapira or its agents did not give rise to a conflict, as TKD's representation of Shapira in connection with the Enforcement Motion was complete, and TKD thus could not be deemed Shapira's agent. (*Id.*). Moreover, given the evidence that TKD and the Trustee had created an ethical wall "that effectively seal[ed] off the use of any such confidential information that may exist," the Court found that TKD and the Trustee had rebutted the presumption that "associated attorneys are presumed to share client confidences." (*Id.* at 23-24).

Finally, with regard to Appellants' assertion of the Interference and Gadot Claims as grounds for conflict — contending that TKD and the Trustee would not investigate or prosecute these claims — the Bankruptcy Court first noted

19

that TKD had never represented Mishmeret or Shapira in connection with these claims. (Bankr. Op. 25). Moreover, the Trustee had "considered these claims and concluded that they [were] unsubstantiated, speculative and their prosecution at [that] time [was] contrary to the best interests of the estate." (*Id.*). Still further, the Court observed that neither Mishmeret nor Shapira was a target of any proposed lawsuits by the Trustee. (*Id.*). More broadly, because TKD had disclosed its prior relationship with Mishmeret and Shapira and had no ongoing relationship with them, and because it was "unlikely that the subject matter of its prior representations [would] become the subject matter of a dispute between the estate and former clients," the Bankruptcy Court found that TKD had no incentive to act contrary to the estate's interests, and that Appellants had presented no evidence of bias. (*Id.* at 26). As the Court stated, Appellants' opposition to the Retention Application, like their assertion of the Interference and Gadot Claims, was merely "strategic." (*Id.* at 27).

### b. Appellants' Cross-Motion to Remove the Trustee for Cause

Turning then to Appellants' cross-motion to remove the Trustee for cause, the Bankruptcy Court noted that such removal "generally requires a showing of actual fraud or injury to a debtor's interest," citing *In re Haworth*, 356 F. App'x 529, 530 (2d Cir. 2009) (summary order). (Bankr. Op. 28). The Court observed that Appellants had not alleged actual fraud or injury to the estate, but rather, relied on the mere fact of the Trustee joining TKD, in addition to his refusal to pursue the Interference and Gadot Claims. (*Id.*).

20

The Bankruptcy Court reiterated that it had identified no conflict on TKD's part that could be imputed to the Trustee.  The Discovery Order had not been violated, as neither TKD nor the Trustee was an "agent" of Shapira. (Bankr. Op. 28).  With respect to the Interference and Gadot Claims, the Court accepted the Trustee's explanation for declining to pursue those claims, and, indeed, found that "[t]he circumstances suggest[ed] that the Interference Claim was interposed as a litigation tactic to defeat [Appellants'] liability to MAG."  (*Id.* at 29-30).  Significantly, the Interference Claim had been asserted against the Ampal estate in addition to the Indenture Trustees, and the Court agreed with the Trustee's assessment that its assertion could undermine more substantial claims for recovery against Appellants.  Similarly, the Trustee had found the Gadot Claim "factually unsupportable," an assessment that the Bankruptcy Court found credible.  (*Id.* at 30).

Lastly, the Court considered the Trustee's willingness to retain conflicts counsel to prosecute the above-referenced claims.  While finding that this "would not resolve an actual conflict arising from [TKD's] prior representation of Mishmeret and Shapira because that conflict would be imputed to the Trustee," the Court had already determined that TKD would not *have* an actual conflict in those circumstances.  (Bankr. Op. 30-31).  Thus, the Trustee could, in his business judgment, retain special conflicts counsel rather than using TKD, though this would not be mandated.  (*Id.* at 31).

### c.   The Bankruptcy Court's Equitable Considerations

Recognizing its own discretion in resolving the motions, the Bankruptcy Court ended its opinion by considering the equities of a potential disqualification of TKD or a removal of the Trustee.  (Bankr. Op. 31-32).  The Court stated that "[w]hile it may be easy to err on the side of disqualification in what may appear to some to be a close case, the bankruptcy court presiding over the case is in the best position to assess the surrounding circumstances and consider the interests of the estate and the creditors and the expeditious resolution of the case."  (*Id.* at 31).  The Court thus found that the Trustee's removal would have "a deleterious effect" and cause "unnecessary delay," given his two-year term overseeing the administration, his faithful and competent execution of his duties, and the Court's confidence that the Trustee would continue his "zealous representation of the estate."  (*Id.* at 32).

### DISCUSSION

## A.   The Standard of Review

A bankruptcy court's order permitting a trustee to retain counsel is a final order over which this Court has appellate jurisdiction pursuant to 28 U.S.C. § 158(a)(1).  *See In re Kurtzman*, 194 F.3d 54, 57 (2d Cir. 1999); *Bank Brussels Lambert* v. *Coan* (*In re AroChem Corp.*), 176 F.3d 610, 620 (2d Cir. 1999).  The Court reviews the bankruptcy court's conclusions of law *de novo* and its findings of fact for clear error, giving "due regard … to the opportunity of the bankruptcy court to judge the credibility of the witnesses."  Fed. R. Bankr. P. 8013; *see also AroChem*, 176 F.3d at 620.  "[A] finding is 'clearly

erroneous' when" the reviewing court is "left with the definite and firm conviction that a mistake has been made." *ASM Capital, LP* v. *Ames Dep't Stores, Inc.* (*In re Ames Dep't Stores*), 582 F.3d 422, 426 (2d Cir. 2009) (quoting *United States* v. *U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

A district court "may affirm [the bankruptcy court's decision] on any ground that finds support in the record, and need not limit its review to the bases relied upon in the decision[] below." *Freeman* v. *Journal Register Co.*, 452 B.R. 367, 369 (Bankr. S.D.N.Y. 2010). That said, the district court may not consider evidence outside the record below. *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 339 (Bankr. S.D.N.Y. 2008). Further, any argument not raised in the bankruptcy court is considered waived and will not be considered by the district court, unless such a waiver would result in manifest injustice. *See Klein* v. *Civale & Trovato, Inc.* (*In re Lionel Corp.*), 29 F.3d 88, 92 (2d Cir. 1994); *see also Best Payphones, Inc.* v. *Manhattan Telecomms. Corp.* (*In re Best Payphones, Inc.*), 432 B.R. 46, 60 (Bankr. S.D.N.Y. 2010), *aff'd* 450 F. App'x 8 (2d Cir. 2011) (summary order).

## B. The Bankruptcy Court Properly Approved the Trustee's Retention Application

### 1. Applicable Law

Under § 327(a) of the Bankruptcy Code, a trustee may employ professionals, including attorneys, provided that those professionals do not "hold or represent an interest adverse to the estate" and are "disinterested." 11 U.S.C. § 327(a). The Bankruptcy Code defines a "disinterested" person as one

who "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason."  11 U.S.C. § 101(14)(C).

Although the Code does not provide a definition for "hold or represent an interest adverse to the estate," the Second Circuit has found that a professional holds or represents an interest adverse to an estate where he:

> [i] [ ] possess[es] or assert[s] any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or [ii] [ ] possess[es] a predisposition under circumstances that render such a bias against the estate.

*AroChem*, 176 F.3d at 623 (citing *In re Roberts*, 46 B.R. 815 (Bankr. D. Utah 1985), *aff'd in relevant part and rev'd and remanded in part on other grounds*, 75 B.R. 402 (D. Utah 1987)).  Further, an adverse interest "includes any interest or relationship, however slight, that would even faintly color the independence and impartial attitude required by the Code and the Bankruptcy Rules."  *Hogil Pharm. Corp.* v. *Sapir* (*In re Innomed Labs, LLC*), No. 07 Civ. 4778 (WCC), 2008 WL 276490, at *2 (S.D.N.Y. Jan. 29, 2008) (internal citations and quotation marks omitted); *see also In re Granite Partners, L.P.*, 219 B.R. 22, 33 (Bankr. S.D.N.Y. 1998) ("[T]he professional has a disabling conflict if it has either a meaningful incentive to act contrary to the best interests of the estate and its sundry creditors — an incentive sufficient to place those parties at more than acceptable risk — or the reasonable perception of one." (internal citation and quotation marks omitted)).  A court should disqualify counsel

24

where "it is plausible that the representation of another interest may cause the debtor's attorneys to act any differently than they would without that other representation." *In re Leslie Fay Cos., Inc.*, 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994).

Moreover, as the Second Circuit has stated, § 327(a) "is phrased in the present tense, permitting representation by professionals 'that do not *hold* or *represent* an interest adverse to the estate,' and limiting the class of acceptable counsel to those 'that *are* disinterested persons.'" *AroChem*, 176 F.3d at 623 (emphases in original). As a result, "counsel will be disqualified under section 327(a) only if it presently holds or represents an interest adverse to the estate, notwithstanding any interests it may have held or represented in the past." *Id.* (internal quotation marks and alterations omitted).

Additionally, under the Code, a professional "is not disqualified for employment … solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest." 11 U.S.C. § 327(c). "An actual conflict involves the representation of two presently competing and adverse interests, while a potential conflict occurs where the competition may become active if certain contingencies arise." *Granite Partners*, 219 B.R. at 33; *see also Diva Jewelry*, 367 B.R. at 472 (defining actual conflict of interest as "an active competition between two interests, in which one interest can only be served at the expense of the other"). As the *Granite Partners* court stated, while

25

"[t]he distinction often seems artificial, and some courts have rejected it," the Code "perpetuates it in certain situations," including § 327(a).  219 B.R. at 33.

Finally, the trustee bears the burden of demonstrating that the professional he seeks to employ is qualified for the appointment.  *See, e.g., In re 245 Associates, LLC*, 188 B.R. 743, 750 (Bankr. S.D.N.Y. 1995); *Leslie Fay Cos., Inc.*, 175 B.R. at 531.

### 2.   Discussion

Reiterating their arguments below, Appellants argue that the Bankruptcy Court erred in permitting appointment of TKD as counsel to the Trustee because: (i) TKD represents adverse interests, namely, Mishmeret and Shapira; (ii) TKD has an actual conflict, in that it cannot act adversely to Mishmeret or Shapira; and (iii) the Discovery Order prohibits TKD and the Trustee from accessing relevant materials for the representation.  For the reasons stated in the remainder of this section, all of these arguments fall short.

### a.   TKD Does Not Presently Represent Mishmeret or Shapira

Appellants contend that Mishmeret and Shapira hold or represent interests adverse to the estate: Mishmeret is an Indenture Trustee with a $44 million proof of claim; Shapira transmitted the earlier demand letter, violating the Automatic Stay, while counseled by TKD; and "the estate has viable causes of action against Mishmeret and Shapira based on their conduct" underlying the Interference and the Gadot Claims.  (Appellant Br. 29-30).  Given these adverse interests, Appellants argue, the Bankruptcy Court's reliance on *AroChem* to conclude that TKD had no present representation of either client

26

was in error; whereas the proposed representation in *AroChem* was limited-purpose and concordant with the goals of that counsel's prior representation, here the proposed representation is general purpose and will cover issues ostensibly contrary to TKD's prior representation of Mishmeret and Shapira. (*Id.* at 30-32).

Moreover, Appellants claim, the Bankruptcy Court clearly erred in finding that TKD's representation of Mishmeret and Shapira had ceased by July 2014, because "TKD continues to maintain duties and loyalties to Mishmeret and Shapira to this day." (Appellant Br. 33). Appellants ground this contention of ongoing representation on (i) TKD's purported inability to bring suit against or take positions adverse to Mishmeret and Shapira, and (ii) TKD's possession of "privileged and confidential materials belonging to Mishmeret and Shapira pertaining to the services TKD rendered for them in the Bankruptcy Case, which services were directly adverse to the Debtor's estate." (*Id.* at 33-34). In this regard, Appellants argue that TKD's completion of the work referenced in their engagement letters with Mishmeret and Shapira does not alter this result, because (i) TKD admitted to performing work outside the scope of those letters, and (ii) TKD's loyalties to those clients persist to this day. (*Id.* at 34-35).

Working backwards, this Court concludes that the Bankruptcy Court's finding that TKD's representation of Mishmeret and Shapira ended by July 2014 was not clearly erroneous. Relying on undisputed evidence obtained at the June 2015 hearing, the Bankruptcy Court took note of Mishmeret's and

27

Shapira's retainer agreements with TKD and the conclusion of each discrete

representation:

- Mishmeret retained TKD in June or July of 2013 to enforce its rights as an Indenture Trustee of a sinking fund, which dispute was ultimately settled; TKD appeared on Mishmeret's behalf in June 2014 in connection with the motion to approve the settlement agreement (Bankr. Op. 14-15);

- Mishmeret and Shapira retained TKD in October 2013 in order to oppose the Enforcement Motion, which dispute was resolved by the Bankruptcy Court's Order in January 2014 (*id.* at 15); and

- TKD represented Mishmeret in connection with the LFA, "although no formal retainer agreement was signed," which representation terminated following the Bankruptcy Court's approval of the LFA in June 2014 (*id.*).

Indeed, the Bankruptcy Court stated, TKD's "invoices confirmed the beginning

and end of its representation of Mishmeret and Shapira," with the first invoice

dated July 1, 2013, and the final invoice dated August 1, 2014.  (*Id.*).  These

records, in combination with testimony from Scott Markowitz that TKD did not

perform work for Mishmeret or Shapira after July 15, 2014, adequately

substantiated the Bankruptcy Court's finding that TKD's representation of

those entities had ceased by July 2014.  (*Id.* at 15-16).  *See Revise Clothing,*

*Inc.* v. *Joe's Jeans Subsidiary, Inc.*, 687 F. Supp. 2d 381, 391 (S.D.N.Y. 2010)

("'In what is perhaps the most typical situation, an attorney-client

relationship … is terminated, simply enough, by the accomplishment of the

purpose for which it was formed in the first place.'" (quoting 48 AM. JUR. PROOF

OF FACTS 2D § 18)).

While Appellants contend that TKD performed additional work outside the scope of these agreements, thereby suggesting that TKD's representation was not so clearly delineated, even this work is not alleged to have been performed later than July 2014, the date by which the Bankruptcy Court determined the representation had ended.  (*See* R. 468-69 (Markowitz testified he received "maybe one e-mail" regarding the sinking funds in approximately July 2014, and "spent a minute or two on it")).  Such limited additional work — which related to TKD's *prior* work on the sinking funds, occupied only minutes, and ended contemporaneously with TKD's other work for Mishmeret and Shapira — does not warrant a finding of clear error.

Appellants' legal challenge to the Bankruptcy Court's reliance on *AroChem* is equally unavailing.  Although *AroChem* was decided in the context of special counsel pursuing a claim aligned with the claim of the creditor it previously represented, the Second Circuit did not cabin its statement that "section 327(a) is phrased in the present tense, permitting representation by professionals 'that do not *hold* or *represent* an interest adverse to the estate,' and limiting the class of acceptable counsel to those 'that *are* disinterested persons.'"  176 F.3d at 623 (citing 11 U.S.C. § 327(a)) (emphases in original).

Moreover, as Appellees point out, *Diva Jewelry* makes clear that such considerations also apply in the general counsel context.  That court stressed, using an analysis that is persuasive albeit not precedential, *AroChem*'s focus on "the importance of distinguishing between past representation, on the one hand, and present and future representation, on the other," and stated that

such past representation would pertain to the "existence or nonexistence of an *actual conflict*" under § 327(c). *Diva Jewelry*, 367 B.R. at 471-72 (emphasis in original); *see also In re MF Global Inc.*, 464 B.R. 594, 600 (Bankr. S.D.N.Y. 2011) (stating, in approving trustee's application for counsel, that "the test for the presence of adverse interests is not retrospective; courts only examine present interests when determining whether a party has an adverse interest" (internal quotation marks and alterations omitted)).

Separately, Appellants' suggestion that TKD has ongoing duties and loyalties to Mishmeret and Shapira does not save their challenge. The Bankruptcy Court found — and did not clearly err in finding — that TKD had "no ongoing relationship with Shapira or Mishmeret," because, as discussed above, all such representation had terminated by July 2014. (Bankr. Op. 26). Appellees have also identified a logical flaw in this argument: While conceding that the New York Rules of Professional Conduct impose duties relating to former clients, Appellees point out that the principle espoused by Appellants would render conflicted any proposed counsel who had previously represented a creditor. (*See* Appellee Br. 28-29 ("[T]he imposition of legal duties upon attorneys to their former clients surely does not convert a former client to a present client…. [C]arried to its logical conclusion, no attorney would be able to pass the adverse interest test regardless of how limited and remote the prior representation.")). As made clear by the provisions of and law interpreting § 327 of the Code, this is not the case; the Code anticipates that a professional may have been employed previously by a creditor, and clearly states that the

30

remedy in such situation is to discern the presence or absence of "an actual

conflict of interest."  11 U.S.C. § 327(c).  Thus, ongoing ethical duties to former

clients cannot, alone, prevent later representation of an estate.

Further, while Appellants state that TKD possesses privileged materials

belonging to Mishmeret and Shapira, necessitating an ethical wall, this fact

does not compel the conclusion that TKD has an actual conflict.  Indeed, the

ethical wall militates *against* a finding that the privileged materials pose any

issue.  As the Bankruptcy Court found:

> [T]here is no danger of the disclosure of confidential
> information.   The Trustee produced uncontroverted
> evidence of the creation of a bilateral ethical wall on May
> 8, 2015 that effectively seals off the use of any such
> confidential information that may exist.  The Mishmeret
> files were moved off-site, and the Trustee's confidential
> information is under the exclusive control of the Trustee
> and the former Spizz Cohen attorneys.  Goldstein also
> testified in this regard that the confidential information
> covered by the *Discovery Order* was physically located
> in a portable hard drive in his possession.  Moreover,
> neither group has computer access to the other group's
> files.

(Bankr. Op. 23 (emphasis in original); *see also id.* (finding "no evidence that

any confidential information was actually exchanged prior to the creation of the

ethical wall" (internal citation omitted)).  These findings were based on

testimony that the Bankruptcy Court observed and credited, and this Court

will not conclude that they are clearly erroneous.  Thus, TKD's mere possession

of privileged materials — which are closely guarded from the Trustee and other

former Spizz Cohen attorneys — does not present an issue.

As the Second Circuit has stated, the presumption that attorneys within a firm share client confidences can be rebutted through evidence of such an ethical wall. *See Hempstead Video, Inc.* v. *Village of Valley Stream*, 409 F.3d 127, 138 (2d Cir. 2005) ("We see no reason why, in appropriate cases and on convincing facts, isolation — whether it results from the intentional construction of a 'Chinese Wall,' or from *de facto* separation that effectively protects against any sharing of confidential information — cannot adequately protect against that."). Here, the Bankruptcy Court correctly stated that the presumption of sharing confidences could be overcome, and found that the ethical wall imposed by TKD — governing both files and performance of past and future work — adequately rebutted the presumption. This Court agrees. Accordingly, TKD's mere possession of privileged materials, if true, does not amount to current representation by TKD or, as discussed in the next subsection, an actual conflict.

### b.    TKD Does Not Have an Actual Conflict

Appellants claim that TKD has an actual conflict under 11 U.S.C. § 327(c), mandating denial of the Retention Application without consideration of equitable factors. (Appellant Br. 35-36). In support of this claim, Appellants first contend that TKD cannot act adversely to Mishmeret or Shapira — as, for example, by objecting to Mishmeret's proof of claim, bringing causes of action against Mishmeret or Shapira, or "taking any steps to protect the estate against improper acts by Mishmeret or Shapira," such as violations of the automatic stay or usurpation of estate assets. (*Id.* at 36). In addition, Appellants state

that this "actual conflict" cannot be remediated by the retention of conflicts counsel, because "where proposed counsel is conflicted from representing [a trustee] with regards to matters central to the bankruptcy, even the presence of conflicts counsel does not make the retention appropriate." (Appellant Br. 36 (citing *In re Project Orange Assocs., LLC*, 431 B.R. 363, 376 (Bankr. S.D.N.Y. 2010))). Because Mishmeret is one of the largest creditors, Appellants argue that its claims (and any potential claims against it) are central, and thus, conflicts counsel cannot mitigate this issue. (*Id.* at 36-37).[9]

Appellants' contention on this ground falls short as well. As noted above, "[a]n actual conflict involves the representation of two presently competing and adverse interests, while a potential conflict occurs where the competition may become active if certain contingencies arise." *Granite Partners*, 219 B.R. at 33. With regard to Mishmeret's proof of claim, the Bankruptcy Court determined that it was filed on February 28, 2013, and had been prepared by another law firm prior to TKD's initial retention. (Bankr. Op. 22). Further, Appellants "ha[d] not argued that Mishmeret's claim should be disallowed," which made sense, inasmuch as the claim itself was an objective figure "based on the amount of the Series C bonds." (*Id.*). Appellees underscore this point, noting that the proof of claim "is not objectionable on its face, asserting nothing beyond the amount owed on the Series C Bonds issued and outstanding as of

---

[9]     In their reply papers, Appellants supplement this argument by pointing to the U.S. Trustee's statement that if the Trustee could not investigate claims against Mishmeret and Shapira, conflicts counsel would not resolve this problem. (Appellant Reply 14-15).

the Petition Date." (Appellee Br. 53-54).  As such, Appellants have not raised an actual, present conflict predicated on the fact of Mishmeret's proof of claim.

With respect to the prospect of bringing causes of action against Mishmeret or Shapira, the Bankruptcy Court determined that the Trustee had adequately investigated these allegations and determined them unworthy of further pursuit; in fact, pursuing those claims could work to the detriment of more certain claims, namely, MAG's $25 million claim against MNF and Maiman.  (Bankr. Op. 25).  Given the successes outlined above, Appellants are hard-pressed to argue that the Trustee was unreasonable in forgoing a claim against Mishmeret and Shapira that he deemed vague and unsubstantiated, and in bringing a claim on the estate's behalf against Appellants that the eschewed claims would only have weakened.[10]

Finally, Appellants' contention that TKD cannot "tak[e] any steps to protect the estate against improper acts by Mishmeret or Shapira" (Appellant Br. 30) is entirely speculative, as no such conflict — actual *or* potential — has arisen at this point.

### c.    The Discovery Order Is Not an Impediment to TKD's Representation

Appellants note that the Trustee and his former firm received confidential information relating to Ampal, some of which the Discovery Order expressly stated could not be shared with Shapira or its "employees, representatives, or agents." (Appellant Br. 37-38).  According to Appellants, "[t]his provision was

---

[10]    The Court recognizes that Appellants have appealed this affirmance to the Second Circuit.  *See In re Ampal-American Israel Corp.*, No. 16-979-cv (Mar. 30, 2016).

34

*vital* to the resolution of an extremely contentious discovery dispute in the Bankruptcy Case and the Appellants would *never* have agreed to deliver Private Information to any law firm that represented Shapira." (*Id.* at 38 (emphasis in original)). Appellants claim that TKD represents and is an agent of Shapira, as its representation has not been formally terminated, and further claim that "[t]he fact that the Private Information is now in Shapira's lawyers' hands — regardless of if anyone besides Mr. Goldstein has seen it — is a violation of the Discovery Order." (*Id.* at 38-39).

As detailed at length above, the Bankruptcy Court found that TKD had instituted an ethical wall that obviated any "danger of the disclosure of confidential information." (Bankr. Op. 23). This Court has identified no error in that finding. Appellants present no compelling argument that this ethical wall would not suffice to protect information disclosed to the Trustee and other Spizz Cohen attorneys pursuant to the Discovery Order, particularly given the testimony that the evidence is segregated at the TKD firm and maintained, literally, under lock and key. While Appellants press that the Trustee's joining TKD violates the letter of the Discovery Order, the Court concurs with the Bankruptcy Court that there is no danger of disclosure of this sensitive information to Shapira — particularly given that TKD's relationship with Shapira has long since ended — and will not find this any impediment to TKD's representation of the Trustee.

**C.    The Bankruptcy Court Properly Denied the Cross-Motion to Disqualify the Trustee**

**1.    Applicable Law**

Pursuant to 11 U.S.C. § 324(a), a bankruptcy court may remove a trustee for cause, which generally requires a showing of "fraud and actual injury to the debtor interests." *In re Freeport Italian Bakery, Inc.*, 340 F.2d 50, 54 (2d Cir. 1965); *accord Haworth*, 356 F. App'x at 530. "The party seeking to remove a trustee must make a 'strong showing because the effect of removal is deleterious to the continuity of the administration of the estate.'" *In re Empire State Conglomerates, Inc.*, 546 B.R. 306, 317 (Bankr. S.D.N.Y. 2016) (citing *Matter of Carla Leather, Inc.*, 44 B.R. 457, 473 (Bankr. S.D.N.Y. 1984), *aff'd*, 50 B.R. 764 (S.D.N.Y. 1985)). "Removal should be exercised only 'if the administration of the estate in bankruptcy would suffer more from the discord created by the present trustee than would be suffered from a change in administration.'" *In re Concept Packaging Corp.*, 7 B.R. 607, 609 (Bankr. S.D.N.Y. 1980) (quoting *Freeport Italian Bakery, Inc.*, 340 F.2d at 55).

"A bankruptcy court's denial of a motion to remove the trustee under 11 U.S.C. § 324(a) is reviewed for abuse of discretion," and "[a] bankruptcy court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *In re Soundview Elite Ltd.*, — F. App'x —, 2016 WL 1459533, at *1 (2d Cir. Apr. 14, 2016) (summary order).

## 2.     Discussion

Appellants do not allege, nor can they credibly do so, that the Trustee should be removed by reason of fraud or actual injury to the debtor.  Instead, Appellants argue that the Trustee should be removed because of (i) his connection to TKD, (ii) his purported refusal to pursue the Interference and Gadot Claims, and (iii) his alleged violation of the Bankruptcy Court's Discovery Order.  (Appellant Br. 33-34).  For the reasons discussed below, the Bankruptcy Court properly determined, and certainly did not abuse its discretion in determining, that the Trustee should not be removed for cause.

### a.     The Trustee's Employment by TKD Does Not Warrant Removal

Appellants contend that the "actual injury" necessary under § 324(a) "may simply be the loss of creditor confidence to the point that discord threatens the estate…. If it would suffer more from the discord created by the present trustee than would be suffered from a change of administration, the removal of the trustee is necessarily the better solution."  (Appellant Br. 39-40 (citing *Dye* v. *Brown* (*In re AFI Hldg., Inc.*), 355 B.R. 139, 149 (B.A.P. 9th Cir. 2006), *aff'd and adopted*, 530 F.3d 832 (9th Cir. 2008))).

Appellants claim the Trustee should be removed for joining a law firm that purportedly represents interests adverse to the estate, on the theory that the firm's conflicts are imputed to the Trustee.  (Appellant Br. 40-41).  As they argue, because TKD cannot be adverse to Mishmeret or Shapira, the Trustee now cannot take actions adverse to those entities either.  (*Id.* at 41).  Appellants also cite a portion of the transcript from the May 2015 hearing,

37

during which the Trustee offered a contrary (and, to Appellants, incorrect) view, stating that if the Bankruptcy Court were to find "that [TKD] was disqualified because it had an … actual conflict … it wouldn't taint me, but I think I would have to separate myself from the firm."  (*Id.* at 42 (citing R. 512-13)).

This Court does not need to pass upon the accuracy of the Trustee's position, although it takes seriously the position of the U.S. Trustee that such a conflict would necessitate the Trustee's withdrawal.  (R. 435-38).  Even if Appellants were correct that TKD's conflicts would be imputed to the Trustee, the Bankruptcy Court determined that "there [was] no conflict to impute to the Trustee because [TKD] is not conflicted."  (Bankr. Op. 28).  As discussed above, the Bankruptcy Court's determination that TKD was not conflicted was not in error, and accordingly, there is no imputation of conflicts that would render TKD's appointment problematic.

### b.    The Trustee's Refusal to Pursue the Interference and Gadot Claims Does Not Warrant Removal

As discussed at length above, the Trustee's decision not to bring the disputed Interference and Gadot Claims against the Indenture Trustees was based on a rational choice to pursue the more certain — and more lucrative — claim against Maiman and MNF, which decision appears to have been validated by subsequent court decisions.  Moreover, it bears noting, the Trustee's unwillingness to pursue these claims long predates (and was in no way affected by) his move to TKD.  In light of the high standards imposed for removal of a properly elected trustee, this Court cannot say that the Bankruptcy Court's decision was erroneous.  *See In re Soundview Elite Ltd.*,

2016 WL 1459533, at *1 ("Grounds for disapproval or removal of a trustee in bankruptcy are not to be found in his formal relationships, and the Court has traditionally stressed the elements of fraud and actual injury to the debtor interests." (internal quotation marks omitted) (quoting *Freeport Italian Bakery, Inc.*, 340 F.2d at 54)).

### c.   The Trustee Has Not Violated the Bankruptcy Court's Discovery Order

In addition, Appellants argue, the Discovery Order prohibits TKD from possessing information necessary for the Trustee to do his job; by virtue of joining TKD, the Trustee now "represents or acts as agent of Shapira," and accordingly, the Trustee cannot possess this information either. (Appellant Br. 44). Because the Trustee *does* possess this information, Appellants claim, the Bankruptcy Court should have removed him "to ensure that the Private Information does not land in Shapira's hands, which could have disastrous ramifications for the parties producing such documents." (*Id.*).

As detailed above, the Bankruptcy Court determined that TKD's institution of an ethical wall and lock-and-key system for the Discovery Order materials adequately protected them from any disclosure to Shapira. As this Court has identified no error in those findings, the Bankruptcy Court sufficiently determined that there was no basis for removal of the Trustee for violation of the earlier Discovery Order.

**D.     The Bankruptcy Court's Discussion of Equitable Factors Was Not Improper**

Finally, Appellants argue that the Bankruptcy Court improperly considered "equitable and case management factors," as the circumstances mandated denial of the Retention Application and removal of the Trustee. (Appellant Br. 44-45).  Whereas the Bankruptcy Court took into account "the impact … that disqualifying TKD and removing the Trustee would have on the Bankruptcy Case; the Trustee's experience in the case; and the long history of litigation and disputes between the Appellants and Mishmeret/Shapira," Appellants maintain that the Court had no such discretion.  (*Id.* at 46). Moreover, Appellants claim, were such considerations permissible, "the equities plainly weigh in favor of the Appellants," given "the devastating impact on the estate from the inability of TKD and the Trustee to pursue valuable causes of action" against Mishmeret and Shapira.  (*Id.*).

As discussed above, denial of the Retention Application and removal of the Trustee was not mandated, as the Bankruptcy Court properly determined that TKD did not presently represent Mishmeret or Shapira, and TKD and the Trustee did not face an "actual conflict" by virtue of TKD's prior representation of Mishmeret and Shapira.  Without such actual conflict, approval or denial of the Retention Application and the cross-motion to remove the Trustee was committed to the sound discretion of the Bankruptcy Court.  Accordingly, in light of the substantial burden necessary for removal of a properly elected trustee, and Appellants' failure to demonstrate that any "devastating impact on the estate" could actually occur in light of TKD's retention by the Trustee, this

40

Court believes the Bankruptcy Court properly considered equitable factors, including the delay that would inhere were the Trustee removed. *See generally In re Vebeliunas*, 231 B.R. 181, 194-95 (Bankr. S.D.N.Y. 1999) (holding that Section 327(a) vests discretion in bankruptcy court to disapprove trustee's choice of special counsel not only for conflict of interest, but also for other reasons serving the best interests of the estate).

## CONCLUSION

The instant appeal is predicated on the fundamental misperception that what is in Appellants' interest is also in the estate's interest. Particularly given the facts and procedural history outlined above, that simply is not the case. *Cf. In re Fletcher Int'l, Ltd.*, 536 B.R. 551, 562 (S.D.N.Y. 2015) ("First, Appellant's interest and the estate's interest are not identical. Appellant is one of many individuals asserting a claim to a portion of the estate. The Trustee's obligation, and that of his appointed professionals, is to make decisions in the best interest of the estate's creditors and investors as a whole, not to do what is best for Appellant alone."). And while Appellants' professed concerns about estate professionals "switching sides" in the middle of a bankruptcy may be appropriate as a general matter, they are not implicated here. The Trustee may have changed firms, but he has not changed his positions or his mode of representing the estate, both of which have frequently brought him in conflict with Appellants. The Bankruptcy Court, which was in the very best position to observe the proceedings, saw no reason to remove the Trustee (or to deny him

the professional assistance that he sought) and many reasons to keep him. This Court agrees.

The judgment of the Bankruptcy Court is affirmed in all respects, and the appeal is dismissed.  The Clerk of Court is respectfully directed to close the case.

SO ORDERED.

Dated:    July 18, 2016
          New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge